William **SCHRECK**

v.

**UNITED STATES of America and Stephen H. Sachs, United States Attorney, Paul R. Kramer, Assistant United States Attorney, Alan Baron, Assistant United States Attorney, and Robert L. Browne, Chief, Intelligence Division.**

**Civ. No. 20236.**

United States District Court
D. Maryland.
June 30, 1969.

Marvin J. Garbis, and Maurice T. Siegel, Baltimore, Md., for plaintiff.

Stephen H. Sachs, U. S. Atty., Paul R. Kramer, Deputy U. S. Atty., and Alan I. Baron, Asst. U. S. Atty., and James H. Jeffries, III, Tax Division, Dept. of Justice, for defendants.

FRANK A. KAUFMAN, District Judge.

The facts of this case are simple and undisputed. The legal issue, however, impels research into the depths of statutory history and case law development involving the Tax Court of the United States and its predecessor, the Board of Tax Appeals.

On November 8, 1967, the Internal Revenue Service (IRS) sent to the plaintiff, William Schreck, a letter advising him that, acting under Section 6851 of the Internal Revenue Code (the Code), the IRS had terminated his taxable year as of October 25, 1967, and that his income tax for the short taxable year of January 1, 1967 to October 25, 1967 was immediately due and payable. In that letter, Schreck was notified that "an assessment has been made against you for the income taxes due from you for such taxable period in the following amount"—

| Taxable Period | Tax Due |
|---|---|
| January 1, 1967 to October 25, 1967 | $20,730.00 |

and was also notified that demand was made for the immediate payment of those taxes.

On November 9, 1967, one day after the date of that notice and demand letter, a Notice of Federal Tax Lien was filed by the IRS against Schreck. That notice stated that it was based on the assessment of November 8th. Further, on November 9, 1967, a Notice of Levy was filed by the IRS. It also stated that it was based on the November 8th assessment, and was served on Irving Machiz in his official capacity as District Director of Internal Revenue for the District of Maryland. That official had in his possession on November 9, 1967 certain of Schreck's property—including $13,749.35 in cash and other personal property—which had been seized from Schreck by agents of the federal government the preceding October 23rd.[1] The notice and demand letter of November 8, 1967 is the only document that Schreck has received from the IRS concerning the assessment of that same date.

Schreck has instituted this present action under section 6213(a) of the Code, seeking an injunction ordering the de-

fendants to return the property which they have seized from him and now hold under the Notice of Levy. Section 6213(a) is a specified exception to the general prohibition of suits to restrain the assessment or collection of taxes (set forth in section 7421 of the Code) and provides as follows:

§ 6213. *Restrictions applicable to deficiencies; petition to Tax Court*

(a) *Time for filing petition and restriction on assessment.*—Within 90 days, or 150 days if the notice [of deficiency] is addressed to a person outside the States of the Union and the District of Columbia, after the notice of deficiency authorized in . section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6861 [relating to jeopardy assessments] no assessment of a deficiency in respect of any tax imposed by subtitle A or B and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. *Notwithstanding the provisions of section 7421 (a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court.* [Emphasis added.]

■ Reduced to essentials, section 6213(a) makes injunctive relief available against the assessment, levy or collection of a tax when the IRS does

---

1. That seizure is subject to the same attacks in Civil No. 19577 which are the bases of the issues dealt with in Silbert, et al. v. United States et al., 282 F.Supp. 635 (D.Md.1968), and 289 F.Supp. 318 (D.Md.1968).

not send to the taxpayer a deficiency notice as required by the tax laws. *See* United States v. Ball, 326 F.2d 898, 902–903 (4th Cir. 1964). The plaintiff's position in this case is that the IRS was required by section 6861 to send him a deficiency notice within 60 days of the November 8th assessment, and, since it did not do so, he may now obtain the equitable relief provided for in section 6213(a). The Government admits that no such deficiency notice was sent to Schreck and concedes that if it were under a legal obligation to send such a notice, an injunction should now issue under section 6213(a). But the Government vigorously argues that neither the Code nor the Treasury Regulations require a deficiency notice to be sent to Schreck and that the Government is therefore justified in declining to provide such a notice.

■ It would appear that the parties have joined issue on whether or not a certain letter must be sent by the IRS to Schreck, which would, at first blush, appear to pose a wholly uninteresting, technical issue. What saves it from this fate is that the deficiency notice is a jurisdictional prerequisite to adjudication in the Tax Court, Mason v. Commissioner of Internal Revenue, 210 F.2d 388 (5th Cir. 1954); it is, as the Ninth Circuit has pointed out, a "ticket to the tax court," *see* Corbett v. Frank, 293 F. 2d 501, 502, 503 (9 Cir. 1961). Thus, the real issue in this case is whether a taxpayer has a right to have adjudicated in the Tax Court the validity of an assessment in a jeopardy situation made for a short-year period. The resolution of this basic issue must be made within the confines of "the harmony of our carefully structured twentieth century system of tax litigation." [2]

I.

A. The enactment of the Revenue Acts of 1916 and 1918 followed close on the heels of the ratification of the Sixteenth Amendment. Neither Act provided for a procedure by which a taxpayer could challenge, prior to payment, the validity of an assessment by the IRS. The only remedy prescribed was a suit for refund following payment of the tax.

Section 250(g) of the 1918 Act gave the IRS the power to terminate the taxable year before its completion and to declare taxes, for the truncated period, immediately due and payable, once the IRS had found that there existed certain prejudicial activity by the taxpayer which threatened the future collectibility of taxes. That section, which has been repeatedly reenacted in essentially identical language ever since,[3] now stands as section 6851 of the Code and reads, in pertinent part, as follows:

§ 6851. *Termination of taxable year*

(a) *Income tax in jeopardy.—*

(1) *In general.—*If the Secretary or his delegate finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect the income tax for the current or the preceding taxable year unless such proceedings be brought without delay, the Secretary or his delegate shall declare the taxable period for such taxpayer immediately terminated, and shall cause notice of such finding and declaration to be given the taxpayer, together with a demand for immediate payment of the

2. Mr. Chief Justice Warren in Flora v. United States, 362 U.S. 145, at 176, 80 S.Ct. 630, at 647, 4 L.Ed.2d 623 (1960), decision on rehearing of 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958).

3. § 250(g) of the Revenue Act of 1921, 42 Stat. 267; § 282 of the 1924 Act, 43

Stat. 302; § 285 of the 1926 Act, 44 Stat. 68; § 147 of the 1928 Act, 45 Stat. 836; § 146 of the 1932 Act, 47 Stat. 217; § 146 of the 1934 Act, 48 Stat. 725; § 146 of the 1936 Act, 49 Stat. 1703; § 146 of the Internal Revenue Code of 1939, 53 Stat. 63; and § 6851 of the Code of 1954, 68A Stat. 833.

tax for the taxable period so declared terminated and of the tax for the preceding taxable year or so much of such tax as is unpaid, whether or not the time otherwise allowed by law for filing return and paying the tax has expired; and such taxes shall thereupon become immediately due and payable * * *.

As far as remedies under the 1918 Act were concerned, the short-period taxpayer was in the same position as any other taxpayer against whom an assessment was made—he had to pay the tax first and then bring a suit for refund. The IRS's authority to assess income taxes for both the full-year period and the short-year period was found in the general authorizing statute, section 3176 of the Revised Statutes.[4]

The inherent harshness of the pay first-litigate later scheme led Congress in 1924 to establish a non-prepayment forum, the Board of Tax Appeals. *See* H.R.Rep. No. 179, 68th Cong., 1st Sess. 7 (1924).[5] The 1924 Board of Tax Appeals was given limited jurisdiction, however, since section 274(b) and section 279(b) of the Revenue Act of 1924 gave a dissatisfied party—be it the taxpayer or the Government—the right to a further suit in the district courts. Even though this meant that the Board was more or less an advisory body, the Government's power of immediate income tax assessment in the normal (as opposed to jeopardy) case was sharply curtailed by the deficiency notice provision of section 274(a). That section required the IRS to send the taxpayer a deficiency notice of the IRS's finding that a deficiency was due and of the intention of the IRS to assess and to collect the deficiency. But, for sixty days following that notification, the IRS could take no action, and the taxpayer could petition the Board for a redetermination of the income tax deficiency. § 274(a) and (c). The power of the IRS was left virtually unaffected in those cases in which it believed that the assessment or collection of a deficiency would be jeopardized by delay. In the event of a jeopardy assessment under

4. Section 3176 of the Revised Statutes (incorporated in section 1317 of the Revenue Act of 1918) provided:

SEC. 3176. If any person, corporation, company, or association fails to make and file a return or list at the time prescribed by law or by regulation made under authority of law, or makes, willfully or otherwise, a false or fraudulent return or list, the collector or deputy collector shall make the return or list from his own knowledge and from such information as he can obtain through testimony or otherwise. In any such case the Commissioner may, from his own knowledge and from such information as he can obtain through testimony or otherwise, make a return or amend any return made by a collector or deputy collector. Any return or list so made and subscribed by the Commissioner, or by a collector or deputy collector and approved by the Commissioner, shall be prima facie good and sufficient for all legal purposes.

\* \* \* \* \*

*The Commissioner of Internal Revenue shall determine and assess all taxes, other than stamp taxes, as to which returns or lists are so made under the provisions of this section.* In case of any failure to make and file a return or list within the time prescribed by law, or prescribed by the Commissioner of Internal Revenue or the collector in pursuance of law, the Commissioner of Internal Revenue shall add to the tax 25 per centum of its amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause *and not to willful neglect,* no such addition shall be made to the tax. In case a false or fraudulent return or list is willfully made, the Commissioner of Internal Revenue shall add to the tax 50 per centum of its amount.

The amount so added to any tax shall be collected at the same time and in the same manner and as part of the tax unless the tax has been paid before the discovery of the neglect, falsity, or fraud, in which case the amount so added shall be collected in the same manner as the tax. [Emphasis added.]

5. The part of this House Report pertinent to the discussion in the text is reprinted in Seidman, Legislative History of Federal Income Tax Laws 1938-1861, at 759-60 (1938).

section 274(d), no deficiency notice was required; the only way the taxpayer could get to the Board was by filing a claim in abatement and posting a bond. § 279(a) and (b). Thus, if the taxpayer could not post bond, his only available remedy was, again, to pay first and sue for a refund later.

The structure of tax litigation was brought to its basic, present form with the passage of the Revenue Act of 1926. The 1926 Act changed the rights and remedies of both the normal and the jeopardy income taxpayer. With respect to the normal income taxpayer, the deficiency notice requirement was retained, with the Board of Tax Appeals (later called the Tax Court of the United States) given expanded jurisdiction. No recourse could be had to a federal district court by either the disappointed taxpayer or by the Government after proceedings before the Board; instead, direct appeal from the Board was provided to the circuit courts of appeals. The normal taxpayer was thus given his choice of two routes to judicial review of the tax assessment—going directly to the Board of Tax Appeals without first paying the tax, or paying first and then suing for a refund in the appropriate district court. Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), decision on rehearing of 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958).

The 1926 Revenue Act also made a fundamental change in the rights and remedies of the jeopardy income taxpayer. *See generally* Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931). Whereas previously he was barred from the Board of Tax Appeals unless he could post adequate bond, he was now given the absolute right to a redetermination of the jeopardy assessment by the Board of Tax Appeals, albeit after the assessment took effect. The Government was authorized, by the predecessor of present section 6861, "immediately [to] assess" an income tax deficiency, the assessment or collection of which it "believes * * * will be jeopardized by delay." § 279(a), Revenue Act of 1926. At the same time, the Government was required to give notice of and to make demand for payment *and*, if the jeopardy assessment preceded in time the notice of deficiency, to send a deficiency notice within 60 days after making the assessment. § 279(b) of the 1926 Act. This enabled the jeopardy taxpayer, under section 274(a), to petition for an adjudication by the Board of Tax Appeals within 60 days of the mailing of the deficiency notice. That procedure has been carried over to the present with slight changes and is now set forth in sections 6861, 6212(a) and 6213(a) of the 1954 Code.[6] Section 6861 provides, in part pertinent to the present discussion:

> § 6861. *Jeopardy assessments of income, estate, and gift taxes*
>
> (a) *Authority for making.*—If the Secretary or his delegate believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary or his delegate for the payment thereof.
>
> (b) *Deficiency letters.*—If the jeopardy assessment is made before any notice in respect of the tax to which the jeopardy assessment relates has been mailed under section 6212(a),

---

6. In the first sentence of section 274(a) of the 1926 Act, the IRS was authorized to send deficiency notices. That authorization is now found in section 6212(a) of the 1954 Code, which provides:

If the Secretary or his delegate determines that there is a deficiency in re-

spect of any tax imposed by [the income, estate and gift tax laws], he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail.

then the Secretary or his delegate shall mail a notice under such subsection within 60 days after the making of the assessment.

Section 6861, like its predecessor, section 279(b) of the 1926 Act therefore requires the IRS to mail a deficiency notice to the taxpayer within 60 days of the date of the jeopardy assessment. The period in which the taxpayer can petition for a redetermination of the deficiency by the Tax Court has been enlarged to 90 days (it was orginally 60 days (§ 274(a)) following the mailing of the deficiency notice. Section 6213(a) of the 1954 Code. Deficiency notices are now commonly referred to as "ninety-day letters."

In sum, then, both the normal and jeopardy income taxpayer were given the right, through the deficiency notice technique, to judicial review by the Board of Tax Appeals (now the Tax Court). The only difference—and, as the subsequent discussion will make clear, a very important one—was that the normal taxpayer had the right to petition for and receive a determination by the Board before the assessment, while the IRS had the power to make the jeopardy taxpayer wait as long as 60 days after the jeopardy assessment for a similar right to petition to and obtain review by the Board. Furthermore, if the Government did not send the deficiency notice as required, both the normal and jeopardy income taxpayer were given the right to obtain injunctive relief in the district courts under present section 6213(a) (quoted in this opinion *supra*, p. 1267). That is precisely what the plaintiff seeks in this suit in a short-year jeopardy tax assessment situation.

The plaintiff's argument is at once simple and powerful: The careful development of the structure of tax litigation sketched above shows, he urges, a definite congressional intent to mitigate the harshness of the pay first-litigate later rule by making available to all income taxpayers—normal and jeopardy alike—the Tax Court as a non-prepayment forum. Viewed as either a normal or jeopardy assessment, the Government's refusal to give him a "ticket to the Tax Court" violates that congressional intent.

The Government's answer, in effect, is that this argument is too simple. Pointing to the fact that the predecessors of section 6851 were repeatedly reenacted without change during the 1918–1926 period,[7] the Government takes the position that Congress left the Government with independent income tax assessment authority, unrestrained by review in the Tax Court, with respect to taxpayers whose taxable years could be terminated under section 6851. The Government's view is that the division into two types of assessments described by the plaintiff —normal and jeopardy—does not tell the entire story. Rather, the Government contends, there is a different jeopardy assessment authority conferred by section 6851. According to the Government, a section 6861 assessment is appropriate when there is a predetermined and preexisting income tax deficiency and subsequent activity of the taxpayer threatens to prejudice its collection; whereas, on the other hand, a section 6851 assessment is available when there is no predetermined or preexisting tax deficiency but only a probable deficiency and current activity of the taxpayer threatens the future collectibility of that probable deficiency. There is certainly logic in each of the conflicting inferences which the plaintiff and the Government draw from the chronology of legislation during the 1918–1926 period. Unfortunately, neither the research of counsel nor of this Court has uncovered any legislative history which compels a solution of this problem.[8] Thus, in the

7. *See* Barton & Browning, Federal Income and Estate Tax Laws 296–301 (4th Ed. 1929) and statutes cited in n. 3 of this opinion *supra*.

8. Counsel and this Court have found only one case involving an assessment made before 1926, relating to a period of less than twelve months. In Kerr v. Bowers,

main, there are available only the limited inferences which can be drawn from the four corners of the statute books themselves.

This Court believes that a more natural reading of the legislation and its chronology is found in the plaintiff's theory. Section 6851, as orginally enacted in the 1918 Act (as section 250(g)) neither purported nor needed to give assessment authority to the Government; that authority was explicitly provided elsewhere, i. e., in section 3176 of the Revised Statutes. When the first stage of statutory changes occurred in 1924, the assessment power of the Government in jeopardy situations was left unaffected. Since the authority to make immediate jeopardy assessments was still provided elsewhere, i. e., in section 3176, the only authority which section 6851's predecessor had to supply was that contained on its face—to terminate the taxable year and accelerate the due date of payment. However, when the second stage of changes was reached in 1926, and the income tax litigation structure was given its basic present form, the assessment power of the Government was curtailed in *both* the normal and the jeopardy situations. As noted above, the limitations took the form of the deficiency notice requirements. The predecessor of section 6212(a) and section 6213(a), as set forth in the Act of 1926, was section 274(a), and that section specifically listed each exception to the mailing of a deficiency notice as a condition precedent to assessment:

> * * * *Except* as otherwise provided in subdivision (d) or (f) of this section [§ 274] or in sections 279, 282, or 1001, *no assessment of a deficiency in respect of the tax imposed by this title and no distraint or proceeding in court for its collection shall be made,* begun, or prosecuted *until such notice has been mailed* to the taxpayer, *nor until the expiration of such 60-day period, nor,* if a petition has been filed with the Board, *until the decision of the Board has become final.* * * * [Emphasis added.]

An examination of the five listed exceptions is significant. It is immediately obvious that section 250(g), the predecessor of section 6851, is *not* one of the exceptions. This omission is highlighted by the contrast to the listed exceptions. Three of the listed exceptions—subdivisions (d) and (f) of section 274 and section 1001—dealt with obvious procedural situations, i. e., waiver, additional assessments after the petition, and appeals to the circuit courts. The first listed substantive exception, section 279, is the predecessor of section 6861, and provided:

> If the Commissioner believes that the assessment or collection of a deficiency will be jeopardized by delay, *he shall immediately assess such deficiency* (together with all interest, additional amounts, or additions to the tax provided for by law) *and notice and demand shall be made* by the collector for the payment thereof. [§ 279(a), Revenue Act of 1926; emphasis added].

Thus, this section, on its face, gave specific authority and direction to make jeopardy assessments—"he shall immediately assess such deficiency." So did the other substantive exception, section 282, the predecessor of the present sec-

---

66 F.2d 419 (2d Cir. 1933), the IRS made a special assessment on August 27, 1920, on income taxes allegedly due from the plaintiff for the part of the year 1920 up to that date, and then seized the plaintiff's money to satisfy the assessment. The IRS had not, however, terminated plaintiff's taxable year. The Second Circuit held that the assessment and seizure were unlawful because there were no taxes due and payable. Unfortunately, the Court did not indicate what the source of the assessment authority (i. e., the general assessment authority under section 3176 of the Revised Statutes or section 250(g) of the 1918 Act, the predecessor of present section 6851) would have been if the IRS had terminated the plaintiff's taxable year, thus making taxes for the short-year period immediately due and payable.

tion 6871, which provided, in pertinent part:

> Upon the adjudication of bankruptcy of any taxpayer in any bankruptcy proceeding or the appointment of a receiver for any taxpayer in any receivership proceeding before any court * * * *any deficiency* * * * determined by the Commissioner in respect of a tax imposed by this title upon such taxpayer *shall, despite the provisions of subdivision (a) of section 274, be immediately assessed* if such deficiency has not theretofore been assessed in accordance with law * * *. [Emphasis added.]

No such language specifically authorizing assessments was included in section 250(g), the predecessor of section 6851. Thus, it is reasonable to conclude that no such additional authority was meant to be granted.[9] Instead, Congress seemed to be saying to the IRS: Before the 1926 Act, you could use the predecessor of section 6851 to terminate the taxable year and accelerate the due date

of payment, but to assess you had to use the general authorizing statute. Now, in the 1926 Act, you may still use the predecessor of section 6851 for the same purposes as before, but to assess you must utilize the statute authorizing jeopardy assessments, i. e., the predecessor of section 6861.[10]

What little evidence there is does not indicate that the Government thought otherwise in 1926. There is not one word in the 1926 Treasury Regulations that the predecessor of section 6851 conferred independent assessment authority. *See* 50 U.S. Treasury Decisions (1926), Regulations 69 Relating to the Income Tax Under the Revenue Act of 1926, at 261–262 (Article 1311) [hereinafter cited as Regulations 69]. By way of contrast, those Regulations stated that the predecessor of section 6861 "require[s] [the Commissioner] to assess such deficiency immediately" when he believes that the assessment or collection of the deficiency will be jeopardized by delay. Regulations 69, at 240 (Article

---

**9.** A Report of the Senate Finance Committee (Sen.Rep. No. 22, 69th Cong., 1st Sess. (1926) states in part:

> The bill provides in section 274(a) that except in certain enumerated cases the commissioner can take no action to assess and collect a deficiency until he has mailed to the taxpayer a notice of the deficiency, and if the taxpayer has taken the case to the board, until the decision of the board has become final. Such decision becomes final: (1) on the expiration of the time allowed for appealing to the circuit court of appeals, or (2) where such an appeal has been taken, when the appellate courts have disposed of the case. The bill, therefore, contains in section 274(a) a provision that despite section 3224 of the Revised Statutes (which prohibits injunctions to restrain the assessment or collection of the tax) the taxpayer may in a proper case go into court for an injunction to restrain the commissioner from assessing or collecting a deficiency until the procedure outlined in the bill has been completed. Seidman, *supra* at 621.

**10.** The Tax Court's jurisdiction applies only to disputes involving income, estate and gift taxes. For other taxes, jeopardy

assessments may be made without issuance of a notice of deficiency. Section 6862(a) provides:

> § 6862. *Jeopardy assessment of taxes other than income, estate, and gift taxes*
>
> (a) *Immediate assessment.*—If the Secretary or his delegate believes that the collection of any tax (other than income tax, estate tax, and gift tax) under any provision of the internal revenue laws will be jeopardized by delay, he shall, whether or not the time otherwise prescribed by law for making return and paying such tax has expired, immediately assess such tax (together with all interest, additional amounts, and additions to the tax provided for by law). Such tax, additions to the tax, and interest shall thereupon become immediately due and payable, and immediate notice and demand shall be made by the Secretary or his delegate for the payment thereof.

That section on its face gave the Commissioner authority to terminate the taxable year *and* immediately to assess the tax which was due and payable. As opposed to section 6851, this is another example in which Congress used explicit assessment language to confer assessment authority.

1281). The Regulations used similar language with respect to the predecessor of section 6871, and, more importantly, in doing so they specifically stated that there was no right to a Tax Court redetermination for assessments made under that section:

> * * * In no case shall a petition be filed with the Board for a redetermination of the deficiency after the adjudication of bankruptcy or the appointment of a receiver.
>
> * * * * * *
>
> While the Commissioner is required by section 282 [now 6871] to make immediate assessment of any deficiency, such assessment is not a jeopardy assessment within the meaning of section 279 [now 6861], and consequently the provisions of that section do not apply to any assessment made under section 282 [now 6871]. Therefore, the notice of the deficiency provided for in section 279(b) [now 6861(b)] will not be mailed. * * *

Regulations 69, at 248 (Article 1293). It should be noted that the reason for withholding Board review of a deficiency after the taxpayer has been adjudicated a bankrupt or a receiver has been appointed is that an adequate opportunity for a judicial decision on the merits is provided in the receivership or bankruptcy court. The expected impact of section 6871's predecessor was therefore rather slight. On the other hand, if the Government's view of the meaning of section 6851's predecessor is correct, there would be *no* non-prepayment forum for taxpayers whose taxable years were terminated and an immediate assessment made. It is rather difficult to believe that the Government thought in 1926 that the statutory changes then made had this severe impact but did not recognize that impact in the Regulations, while at the same time the Government included a parallel analysis in the Regulations on other provisions which were seemingly of no greater importance.

B. The Government states a second line of objection to the plaintiff's analysis of the evolution of the income tax litigation during the 1918–26 period. The Government admits that the factual settings encompassed in section 6851 are jeopardy situations and that the assessments made are jeopardy assessments. So much is obvious from its language (any act "tending to prejudice or to render * * * ineffectual proceedings to collect the tax * * * unless such proceedings be brought without delay").[11] But, says the Government, the "thing" assessed is not a "deficiency," because a "deficiency" is that part of a tax which is past due but has not been paid. Under the Government's view, a "deficiency" cannot arise until it is ascertainable, and that cannot occur until the close of the complete tax year. The Government suggests that the "thing" assessed and levied upon is a "tax that may become due and may also become a deficiency," and then argues that since the Tax Court's jurisdiction is limited to redetermining "deficiencies," the 1926 Congress intended a unique assessment to be made under the predecessor of section 6851 in connection with which there would and could be no Tax Court or any other non-prepayment review.

It is true that the jeopardy assessment authority in section 6861 is, and always has been, limited to "deficiencies." Thus, if the Government's distinction is correct and a "deficiency" cannot be assessed upon a short-term taxpayer, then the power to make that assessment must lie elsewhere than sec-

---

11. Revenue Act of 1926, § 285(a). Indeed, if the Government contended that this is not a jeopardy situation, the Government would be in a difficult position in this case, since its levy, without waiting 10 days after demand and notice, on Schrenk's property can be valid only as a jeopardy levy under section 6331 of the 1954 Code. Under that section, if collection had not been in jeopardy, the IRS could not have levied until 10 days after the notice and demand letter of November 8, 1967.

tion 6861 and that might well be in section 6851 itself. But neither the statutes nor the Regulations support the Government's proposition that Congress intended to draw very narrow distinctions when it defined the term deficiency. Section 273 of the 1926 Revenue Act provided:

As used in this title in respect of a tax imposed by this title the term "deficiency" means—

(1) The amount by which the tax imposed by this title exceeds the amount shown as the tax by the taxpayer upon his return; but the amount so shown on the return shall first be increased by the amounts previously assessed (or collected without assessment) as a deficiency, and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax; or

(2) If no amount is shown as the tax by the taxpayer upon his return, or if no return is made by the taxpayer, then the amount by which the tax exceeds the amount previously assessed (or collected without assessment) as a deficiency; but such amounts previously assessed, or collected without assessment, shall first be decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax.

As the 1926 Regulations pointed out, section 273 recognized two classes of cases: (1) "where the taxpayer makes a return showing some tax liability," and

(2) "where the taxpayer [either] makes a return showing no tax liability or * * * fails to make a return." In the second case, "the deficiency is the amount determined to be the correct amount of the tax." Regulations 69, at 226 (Article 1231). This construction covers the case of a jeopardy assessment pursuant to the termination of the taxpayer's taxable years. Upon the termination, the tax becomes immediately due and payable (§ 6851 and its predecessors) and, if an immediate assessment is made, the "amount determined to be the correct amount of the tax"—i.e., the amount assessed—is the deficiency. Thus, whatever ambiguity is present in the statutes themselves [12] was seemingly resolved against the Government's present position, by its own construction at the most relevant time, i.e., immediately after the 1926 statute was enacted.

Although this Court has not been persuaded by the Government's view of the meaning of the 1918–1926 legislation, it must be said in all candor that a contrary reading is not compelled and must be based, to a large extent, on inferences drawn from piecing together complex and experimental legislation. For that reason, this Court is not content to rest its decision alone on the words of the statutes but rather upon the words of the statutes together with other important factors, including administrative action, legal developments in Congress and the courts, and opposing considerations of policy.

12. Even a cursory glance of section 273 reveals a basic issue of construction: "deficiency" is defined in terms of itself.

A second ambiguity which may be resolved by the Regulations is found in the predecessor of section 6851. As pointed out above, the Commissioner was first given power under that statute's predecessor in 1918 to close a taxpayer's taxable year and declare that short-year taxes were immediately due and payable. A penalty section was added in 1921 and provided:

If a taxpayer violates or attempts to violate this subdivision there shall, in addition to all other penalties, be added as part of the tax 25 per centum of *the*

*total amount of the tax or deficiency in the tax*, together with interest at the rate of 1 per centum per month from the time the tax became due. [Emphasis added; § 250(g) of 1921 Act.] Without the aid of the Regulations, no more could be said of this provision than that it shows that a "deficiency" may arise in a section 6851 situation. This in itself challenges the Government's position. Against the backdrop of the Regulation (Article 1231) discussed in the text, a reasonably possible reading of the emphasized phrase becomes: " * * * the total amount of the tax [if there is no assessment] or deficiency in the tax [if there is an assessment]."

## II.

The Government suggests that an examination of the post-1926 period reveals that the IRS has asserted an independent assessment authority under section 6851 and has been sustained by the courts. In view of the relative complexity of the statutory scheme involved, a long-standing and unchallenged administrative construction would certainly be entitled to great weight. However, the reported cases in the post-1926 period reveal that the IRS's use of section 6851 has been infrequent, far from uniform, and falls within the following categories:

(a) In one case, the Government terminated the taxable year pursuant to section 6851, made a jeopardy assessment "allegedly" pursuant to section 6861, and *conceded* to the Court that "Section 6851 confers no assessment authority * * *." Rinieri v. Scanlon, 254 F.Supp. 469, 474 (S.D.N.Y.1966).

(b) In one case in which the Government terminated the taxable year and assessed, the Court noted that the Government acted under section 6851 and section 6861, Carlo v. United States, 286 F.2d 841, 848 (2d Cir. 1961). In another case, Fancher v. United States, 10 AFTR 2d 5922, 62–2 USTC ¶ 9819 (D. S.Dak. 1962), the Government declared a short tax year under section 6851, and, after making penalty assessments under different sections of the Code, sent a deficiency notice to the taxpayer.

(c) In two cases, the Government definitely relied on section 6851 to terminate the taxable year *and* immediately to assess a tax liability and sent no deficiency notice, Puritan Church—The Church of America, et al., 10 T.C.M. 485, 494 (1951), aff'd per curiam sub nom 93 U.S.App.D.C. 129, 209 F.2d 306 (1953); Ludwig Littauer & Co., Inc., 37 B.T.A. 840 (1938), appeal dismissed, 1968 CCH 63,018, 1968 P–H 37,610 (2d Cir.1938).

(d) In one case, the Government probably used section 6851 for authority to terminate and to assess, Rogan v. Mertens, 153 F.2d 937 (9th Cir. 1946).[13]

(e) In two cases, it does not appear possible to say whether the Government made its short-year assessments pursuant to section 6851 or 6861 or whether the Government sent deficiency notices, United States v. Rochelle, 384 F.2d 748 (5th Cir. 1967); United States v. Johansson, 8 AFTR 2d 6001, 62–1 USTC ¶ 9130 (S.D.Fla.1961), remanded, 336 F.2d 809 (5th Cir. 1964), on remand, 19 AFTR 2d 1412, 67–2 USTC ¶ 9505 (S. D.Fla.1964), aff'd, Feature Sports, Inc. v. United States, 374 F.2d 890 (5th Cir. 1967).[14]

Thus, of the eight cases which have been uncovered for the period of more than forty years which has elapsed since 1926, the Government followed a procedure which it now disclaims two or three times, and it has acted consistently with its present position in two and possibly in as many as six instances. Thus, no clear pattern emerges from those cases. It is also relevant to point out that the Government takes its present position in the face of its concession, made less than three years ago, that this position has no force. Rinieri v. Scanlon, 254 F.Supp. 469, 474 (S.D.N.Y.1966).

13. In *Mertens*, the taxpayers (husband and wife) voluntarily paid the assessments within sixty days, so the issue of whether the IRS sent deficiency notices was not present. Although the Court did not say explicitly that the IRS claimed independent assessment authority under section 6851, that would appear to be the implication of the Court's language.

14. The disputed issues in the *Rochelle* case were far removed from the IRS's assessment powers under sections 6851 and 6861, so only cursory reference is made. In *Johansson*, the Government brought a collection suit within sixty days of the short-period assessment, so, as in *Mertens*, *supra* n. 12, we do not know whether the Government would have sent a deficiency notice; the case does not reveal, nor in any way imply, whether the Government based its assessment authority on section 6851 or section 6861.

Moreover, the Treasury's own Regulations, both as enacted in 1926 (*see* pp. 20–21 of this opinion, *supra*) and in their present form, are inconsistent with the meaning of the word "deficiency" which the Government urges in this case. Treasury Regulations § 301.6211–1(a) provides in pertinent part:

> If no return is made * * * for the purpose of the definition "the amount shown as the tax by the taxpayer upon his return" shall be considered as zero. *Accordingly, in any such case, if no deficiencies with respect to the tax have been assessed, or collected without assessment,* and no rebates with respect to the tax have been made, *the deficiency is the amount of the tax imposed* by [the income, estate or gift tax laws]. [Emphasis added.]

Thus, the Regulations' definition of "deficiency" would seem broad enough to cover assessments made for a short year, whether or not a return is filed.[15]

The Government, in answer to all of this, reiterates that it was not *bound* to follow the procedure that it has taken in every case and that the Government now stands on its rights. In this connection, the Government places primary reliance on one case in which it took essentially the same position as in the present case and was explicitly sustained by the Board of Tax Appeals. That case, decided in 1938, is Ludwig Littauer & Co., Inc., *supra*, 37 B.T.A. 840, in which the Commissioner, upon determining that the taxpayer intended to hinder and prevent the collection of tax justly due for part of the year 1937, terminated his taxable year, assessed a "total deficiency" in excess of $90,000, and declared it immediately due and payable. The taxpayer sought to treat the letter informing him of this action (the notice and demand letter) as a deficiency notice and petitioned the Board for a redetermination within ninety days of the date of the letter. The Government moved to dismiss on the ground that the Board lacked jurisdiction because no final determination of a deficiency had been made and no notice of deficiency had been sent to the taxpayer. After closely examining the statutory scheme set up in the predecessors of sections 6213, 6861 and 6851, the Board concluded that each of those three sections conferred independent authority on the Commissioner to collect taxes. Although the Board viewed section 6851 as covering "jeopardy" situations, it distinguished it from section 6861 on the basis that "[b]oth the substance of [section 6851] and its title indicate an intention to supply a remedy in emergency more extreme than that covered by [section 6861]." *Id.* at 841. The Board pointed out that section 6851 did not by itself require the issuance of a deficiency notice and stated:

> It is only after such annual period expires that a determination of correct tax liability can be made, and not until then can it be determined whether there is a statutory deficiency or perhaps a refund of all or part of the amount already collected under [section 6851]. In such circumstances, the amount called a "deficiency" in the notice sent to the petitioner here is not an amount finally determined as a deficiency, and the proceeding to contest it is at this stage premature. The Board is without jurisdiction and the proceedings must be dismissed. [*Id.* at 843.]

The Board suggested that the taxpayer's remedy was to wait until the end of the year, when a final determination of the full year deficiency could be made. In the meantime, the taxpayer "may escape

---

15. The same result follows even if the IRS, using its authority under section 6020, files a return for the short period. Such a return merely states the IRS's determination of the taxpayer's liability. The starting point for which a deficiency is computed (and which the Tax Court has jurisdiction to redetermine) is the amount admitted by the taxpayer to be due and payable. Taylor v. Commissioner, 37 B.T.A. 427 (1937).

the rigor of immediate payment of the short term tax" by posting an adequate bond. *Id.* at 843.

This Court has carefully considered the analysis and conclusion of the Board in the *Littauer* case—[16]and has done so with a full realization of the expertise of the men who composed that forum. However, an appraisal of the compelling policies which vitiate against the vitality of that holding, and which have been reflected with regard to other issues in subsequent legal developments, including expressions of opinion by the Tax Court itself, has convinced this Court that the *Littauer* decision should not control the resolution of this case.

### III.

As this Court has already pointed out, the real focus of the present case is what rights, if any, this plaintiff has to litigate, without prepayment, the validity of the assessment and levy made against him. That issue must be considered against the background of congressional intent.

■■ In the normal case, after the IRS has determined that there is a deficiency, Congress requires the IRS to send a deficiency notice, or "ninety-day letter," informing the taxpayer of that determination and of the IRS's intention to assess and collect the deficiency. During the ninety-day period, the IRS is barred from action by way of assessment or levy. The taxpayer may obtain a further unconditional respite from assessment or collection action if he petitions the Tax Court for a redetermination of the deficiency, since the IRS cannot act during the pendency of the Tax Court litigation. All this is set forth in section 6213(a) of the 1954 Code, has been in effect from 1926, and is still in effect today.[17]

■ In comparison to a "normal" case in which summary governmental enforcement action is virtually proscribed by section 6213(a), the enforcement power of the Government in a section 6861 "jeopardy" case is rather awesome.[18] Whenever the IRS "be-

16. The reasoning and the statements in *Littauer,* as has been stated, support the Government's position in this case. The *Littauer* holding, as such, is only that a taxpayer could not get to the Board of Tax Appeals without a ticket, i. e., a deficiency notice. In *Littauer,* the taxpayer filed his petition before the end of the taxable year. On the other hand, in this case, the taxpayer commenced Civil No. 19577 (*see* n. 29 *infra*) in this Court in June, 1968, complaining of the lack of a deficiency notice covering the short tax year which ended November 8, 1967. The Board did not state in its opinion in *Littauer* that the IRS was not required to send a deficiency notice after the termination of the calendar year, with reasonable promptness, but the rationale embodied, and the statements appearing, in that opinion would clearly so indicate. In that connection, this Court notes the precise and careful reasoning of the opinion, as well as the fact that it was cited in Puritan Church—The Church of America, et al., 10 T.C.M. 485, 494 (1951), aff'd per curiam sub nom, 93 U.S.App.D.C. 129, 209 F.2d 306 (D.C. Cir. 1953).

17. If the taxpayer waives his right to prepayment litigation in the Tax Court by not acting within the ninety-day period, the Government's power to compel collection is not without limitations imposed by Congress. Even then, if the taxpayer does not voluntarily pay the tax, the Government must first send a notice and demand letter and then wait ten days for compliance before it levies upon the taxpayer's property in the normal (as opposed to jeopardy) case. *See* section 6331(a).

18. For a comprehensive and critical analysis of jeopardy assessments, *see* Note, Jeopardy Assessment: The Sovereign's Stranglehold, 55 Geo.L.J. 701 (1967) (the author's title is apparently borrowed from the Seventh Circuit's opinion in Homan Mfg. Co. v. Long, 242 F.2d 645, 651 (1957)). *See also* Hochman & Tack, Jeopardy Assessments—A System in Jeopardy, Taxes 418 (1967); Gould, Jeopardy Assessments When They May Be Levied and What To Do About Them, N.Y.U. 18th Institute on Federal Taxation 937 (1960); Kaminsky, Administrative Law and Judicial Review of Jeopardy

lieves" that delay will jeopardize the assessment or collection of a deficiency, it is authorized immediately to assess (section 6861), immediately to send notice and demand for payment (*ibid.*), and immediately to levy upon all the taxpayer's property (section 6331). The courts have consistently refused,[19] although sometimes reluctantly,[20] to review whether the IRS's determination of jeopardy had any substance whatsoever. Only when "extraordinary and exceptional circumstances" exist will the courts in an injunction proceeding examine into the validity of the underlying assessment.[21] And even that narrow review standard may have been eroded by the opinion in Enochs v. Williams Packing Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L. Ed.2d 292 (1962).[22]

Nevertheless, even with this unquestioned statutory power of immediate assessment and seizure, the statutory safeguards superimposed upon the jeopardy assessment system contain restraints. The following four protections are now afforded to the section 6861 jeopardy taxpayer:

1. The IRS is required to send a deficiency notice within sixty days after the assessment, thus enabling the jeopardy taxpayer to litigate in the Tax Court. § 6861(b). If the IRS does not comply with this requirement, the assessment and levy (or seizure) may be enjoined by the federal courts. § 6213(a); United States v. Ball, *supra.*

2. The jeopardy taxpayer can stay all collection action pending the Tax Court's decision if he is able to post an adequate bond. § 6863(a).

3. Property seized pursuant to the assessment may not, in general, be sold during the pendency of litigation in the Tax Court. § 6863(b) (3) (A).[23]

4. The IRS "may" abate the jeopardy assessment if it "finds" that jeopardy does not exist. § 6861(g).

When applied to any given factual situation, those procedural safeguards may or may not give real protection to a taxpayer who has been subjected to an erroneous assessment and seizure. To a taxpayer who does not have assets far in excess of the assessment, the right to file a bond is an "illusory" remedy;[24] to one whose entire assets have been seized pursuant to the assessment, it "would seem to be mere mockery."[25] The provision that the IRS "may" abate

Assessments Under the Internal Revenue Code, 14 Tax Law Rev. 545 (1959). *Cf.* Wahl, Jr., The Assessment and Collection of Federal Income Taxes, 3 Miami Law Q. 209 (1949).

19. *E. g.,* Lloyd v. Patterson, 242 F.2d 742 (5th Cir. 1957); Homan Mfg. Co. v. Long, 242 F.2d 645 (7th Cir. 1967); Harvey v. Early, 160 F.2d 836 (4th Cir. 1947); Estate of Kohler, 37 B.T.A. 1019 (1938).

20. *See* Kimmel v. Tomlinson, 151 F.Supp. 901 (S.D.Fla.1957).

21. Miller v. Standard Nut Margarine Co., 284 U.S. 498, 510, 52 S.Ct. 260, 76 L.Ed. 422 (1932); Shelton v. Gill, 202 F.2d 503 (4th Cir. 1953); Lloyd v. Patterson, *supra,* 242 F.2d at 744 ("Hardship on a taxpayer does not warrant the issuance of an injunction under § 7421(a).").

22. *See* n. 26 *infra.*

23. The three exceptions to that general prohibition on sale are: (a) if the taxpayer consents to the sale; (b) if the property is perishable; and (c) if the IRS "determines that the expenses of conservation and maintenance will greatly reduce the net proceeds." § 6863(b) (3) (B).

24. *See* Gould, Jeopardy Assessments When They May Be Levied and What To Do About Them, *supra* at 944–45.

25. Kimmel v. Tomlinson, *supra* 151 F. Supp. at 902:
In the instant case *every bit* of property (inclusive of bank accounts) of both taxpayers (and their wives) has been seized; it would seem to be mere mockery to say they, after they have been stripped of all assets, are protected in that they may either post a bond or pay the three hundred odd thousand dollars of taxes and penalties assessed in order to stay the waste of a forced sale of their assets and the certain destruction of their business.
*See also* Shelton v. Gill, 202 F.2d 503 (4th Cir. 1953).

an erroneous jeopardy assessment was enacted in 1953 because the IRS believed that it needed explicit statutory authority to do so.[26] Whether or not the IRS does abate in a given case depends entirely on the persuasiveness of the taxpayer to convince the IRS that it has erred; there is no right to a formal hearing, and the courts have declined to review the IRS's refusal to abate.[27] The only meaningful safeguards are the right to litigation in the Tax Court and the restrictions on sale of most types of property during that litigation. And it is apparent that if the IRS follows its assessment with a levy upon, or seizure of, a large part (or even all) of the taxpayer's property, and refuses to allow him access to that property, then even those provisions may not prevent the destruction of the taxpayer's business and his financial ruin—losses which cannot be remedied by a subsequent favorable judicial decision. This is a risk that Congress has decided must be taken in those rare cases in which the collection of the revenues may be jeopardized by delay.[28] But in making that decision, Congress

has at the same time sought to mute that risk by affording in section 6861 itself a prompt opportunity for litigation in the Tax Court.

If the Government's view of the law is correct, then those taxpayers who have been subjected to a jeopardy assessment for a short-year period are deprived of the prompt opportunity for litigation in the Tax Court which Congress has given to all other jeopardy income taxpayers.[29] The question then arises, what judicial forum *is* available for the taxpayer to contest the assessment and the seizure of his property? If, as the Government says, a litigable deficiency cannot arise until at least the end of the full year, then the taxpayer has absolutely no remedy until then. At that time, a "deficiency" may be determined by the IRS, but the Government has three years in which to do so under the statute of limitations (or six years if the return omits more than twenty-five percent of property includible in gross income, or forever if no return is filed or there is a willful attempt to evade tax-

---

26. *See* Sen.Rep. No. 730, 83d Cong., 1st Sess. (1953):

> At the present time, once such an assessment has been made, the Bureau believes that it does not have the authority to revoke the assessment even though it finds that a mistake has been made and that there is no danger of losing the tax. As a result, the Bureau has had in the past and now has cases before it in which arbitrary jeopardy assessments which may be greatly in excess of any tax found to be due, are a cause of financial embarrassment and danger to the taxpayer involved. This bill simply permits the revocation of a jeopardy assessment whenever it appears that there is, in fact, no danger of losing any tax which may be due.

27. *See, e. g.*, Lloyd v. Patterson, *supra.* *See* Gould, Jeopardy Assessments When They May Be Levied and What To Do About Them, *supra* at 945-46; Hochman and Tack, Jeopardy Assessments—A System in Jeopardy, *supra* at 426-28.

28. The IRS's public position is that the jeopardy assessment power is used "sparingly," with care taken to assure that the assessments are "reasonable." Yet in

fiscal 1965, there were 520 jeopardy assessments made; this figure dropped to 279 in fiscal 1966. *See* Note, Jeopardy Assessments: The Sovereign's Stranglehold, *supra* at 717. Further, compare fiscal 1958, when approximately 2500 jeopardy assessments were made. *See* Gould, Jeopardy Assessments When They May Be Levied and What To Do About Them, *supra* at 937, 944.

29. Nor, it should be pointed out, would the taxpayer have the benefit of two lesser safeguards. The prohibition on the sale of property pending Tax Court litigation and the authorization that the IRS may abate an erroneous assessment are by their terms limited to jeopardy assessments made pursuant to section 6861. *See* §§ 6863(b) (3) (A) and 6861(g). One would think that if Congress believed that section 6851 conferred independent jeopardy assessment power, it would have provided for similar protections. As section 6851 stands, if the Government's position herein is accepted, the only ways that a taxpayer can mitigate the harshness of his taxable year being terminated are by posting an adequate bond or filing a "true and accurate" return. § 6851(e), (b).

es). § 6501(a), (e), (c). Until the IRS decides to determine what full-year deficiency, if any, exists and then sends a notice of deficiency to the taxpayer, he cannot institute suit in the Tax Court. Furthermore, if the Government's view is correct, the taxpayer in this situation may not ever be able to institute a refund suit. For, if the Government levies upon all of his property but does not take action to apply any of it to the tax allegedly due, then the taxpayer cannot sue for a refund for the simple reason that he has not paid anything. Even if the property is physically seized and applied to the jeopardy assessment by the IRS, the taxpayer cannot bring a refund suit unless the value of the seized property is at least as great as the amount of the assessment; otherwise, he is barred by the full-payment rule of Flora v. United States, *supra*. Finally, even if enough is physically seized to satisfy the full-payment rule, the IRS may not, for one reason or another, apply the seized property to the assessment (e.g., because the property may be subject to a forfeiture proceeding). And, of course, there may be other factual situations in which a refund suit is impossible. These hypothetical possibilities are far from fanciful. In this case, Schreck cannot bring a refund suit because: (a) $13,749.35 worth of property was seized, whereas the assessment was $20,730.00 and, alternatively, (b) the property seized was not applied to plaintiff's taxes because it has been held for a forfeiture proceed-

ing. In sum, then, the plaintiff herein has no available judicial forum in which he can challenge the legality of the Government's assessment and seizure. And, given the prohibition of suits to restrain the assessment or collection of taxes set forth in section 7421 of the Code, a suit by the taxpayer for equitable relief will almost surely be dismissed.[30]

In essence, the Government asks this Court to hold that Congress has constitutionally authorized the IRS to seize and sell[31] all of a person's property and has also provided that that person has no right to institute *any* court proceedings, for perhaps longer than three years, in which to litigate the validity of the underlying assessment and the seizure, while at the same time all jeopardy income taxpayers, other than short-year jeopardy income taxpayers, have the right to begin a judicial proceeding within 60 days of the assessment. That proposition on its face of course raises constitutional questions of equal protection and due process.

A somewhat analogous situation has recently been before the courts in cases involving the construction of section 6871. That section gives the Government authority immediately to assess any deficiency upon the institution or adjudication of bankruptcy or receivership proceedings. Subsection (b) further provides:

> (b) *Claim filed despite pendency of Tax Court proceedings.*—In the case

---

30. In Enochs v. Williams Packing Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), the Supreme Court clarified its previous decision in Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932), and indicated that in order to overcome the statutory bar of section 7421, the taxpayer may have to show that (1) the alleged tax is merely an exaction in the guise of a tax, (2) under the most liberal view of the law and the facts the Government could not establish its claim, and (3) the taxpayer has no adequate remedy at law. The unsuccessful attempts of taxpayers to enjoin jeopardy assessments made under section 6861, even upon the undisputed

showing of irreparable financial injury, are discussed in Note, Jeopardy Assessments: The Sovereign's Stranglehold, *supra* at 707–17. One author has characterized the seeking of judicial relief by way of an injunction to restrain jeopardy assessments and collection as "usually a vain hope." Gould, Jeopardy Assessments When They May Be Levied and What To Do About Them, *supra* at 949. There is no apparent reason to believe that the result would be otherwise with respect to jeopardy assessments made under section 6851.

31. *See* note 25, *supra*.

of a tax imposed by subtitle A or B claims for the deficiency and such interests, additional amounts, and additions to the tax may be presented, for adjudication in accordance with law, to the court before which the bankruptcy or receivership proceeding is pending, despite the pendency of proceedings for the redetermination of the deficiency in pursuance of a petition to the Tax Court; but no petition for any such redetermination shall be filed with the Tax Court after the adjudication of bankruptcy, the filing or (where approval is required by the Bankruptcy Act) the approval of a petition of, or the approval of a petition against, any taxpayer in any other bankruptcy proceeding, or the appointment of the receiver.

That subsection on its face is totally unambiguous in withdrawing jurisdiction from the Tax Court once a bankruptcy or receivership proceeding begins. The purpose of that provision is, of course, to avoid the splitting of litigation by giving a court, which already has power over the taxpayer's assets and liabilities, the additional power of adjudicating tax claims which affect that distribution. However, if a broad literal reading is mechanically applied to section 6871(b), and the underlying purpose of the section ignored, then several problems of constitutional proportions arise. In Jamy Corporation v. Riddell, 337 F.2d 11 (9th Cir. 1964), the issue (which was presented in an unusual factual setting) was whether the taxpayer had a right to present his tax claims for adjudication in certain receivership proceedings. Literally read, the first clause of section 6871(b) goes no further than to allow the Government to present its tax claims in such proceedings, while the second clause of that section prohibits the taxpayer from a subsequent petition to the Tax Court. The import of that literal reading is that the taxpayer would have available no non-prepayment forum in which affirmatively to challenge the assessment. The Court refused to accept that result and held instead that the taxpayer as well as the Government has a right to get the tax claim adjudicated in the bankruptcy or receivership court. The Court said:

> We suggest that if all but bankrupts and those in receivership were permitted to contest their taxes without prepayment, serious problems would be presented in the constitutional field of equal protection. Thus, we are justified in using all intendments on Section 6871 to give the corporation in the receivership court a tax court type of review. [*Id.* at 13; footnote omitted.]

A related issue of the construction of subsection (b) of section 6871 was recently presented to the Tax Court in Orenduff v. Commissioner of Internal Revenue, 49 T.C. 329 (1968). The taxpayer was adjudicated a bankrupt by the federal district court in 1961, and, after more litigation, he was granted a final discharge on January 8, 1965. Then, on December 1, 1965, the IRS sent the taxpayer a deficiency notice setting forth deficiencies and additions to the taxes for the years 1956 through 1960. Those claims had not been presented to the bankruptcy court, and the taxpayer petitioned the Tax Court for a redetermination of the deficiencies. The Government, relying on the literal language of the second clause of subsection (b), moved to dismiss for lack of Tax Court jurisdiction. The Government's argument was summarized by the Court:

> [The Government] contends that this case falls within the plain language of section 6871, and, hence, this Court is without jurisdiction. [It] reads section 6871 to deny this Court jurisdiction of any petition for redetermination of any pre-bankruptcy years of a taxpayer regardless of whether such years were the subject of the immediate assessment procedure provided by the section. [It] contends that, since section 6871(b) contains no exceptions from its general prohibition, the fact that the bankruptcy proceedings were no longer pending at the time of [the

Government's] determination of a deficiency is immaterial. [*Id.* at 331.]

The Tax Court disagreed because, it said, the legislative purpose of section 6871 to prevent split adjudication of tax claims "does not require that a taxpayer be denied access to this Court when a completely new deficiency, neither assessed nor claimed in the bankruptcy court, is determined after the bankruptcy or receivership proceedings are closed." *Id.* at 332. The Court commented that the fact that this construction of section 6871 avoids the constitutional problems posed in Jamy Corporation v. Riddell, *supra,* "is support for our view of congressional intent." 49 T.C. at 333 n.4.

The Tax Court also followed the same technique of statutory construction in Prather v. Commissioner of Internal Revenue, 50 T.C. 445 (1968). There the IRS made assessments of deficiencies during the pendency of the bankruptcy court proceedings and presented its claims to that court. The bankruptcy court considered those claims on the merits and discharged the taxpayer. The taxpayer then petitioned the Tax Court for a redetermination of the deficiencies and of the additions to tax for fraud which had also been assessed. The Tax Court held that the taxpayer could not collaterally attack the bankruptcy court's decision with respect to the deficiencies. But the additions to tax assessed presented a different question because the Government had taken the position that the bankruptcy court was without jurisdiction to adjudicate fraud penalties and therefore did not present that claim to the bankruptcy court. Then, making much the same argument as in *Orenduff,* the Government argued that the literal language of section 6871 proscribed Tax Court jurisdiction as well. Rejecting this argument, the Tax Court said:

> The question presented to the Court for determination is whether section 6871 applies to preclude a petition to the Tax Court as regards the additions to tax for fraud assessed by the respondent herein when those additions to tax for fraud were not presented to the bankruptcy court for adjudication and could not have been allowed as a claim against the assets of the bankrupt had they been presented. It is this Court's opinion that the legislative purpose of section 6871 [discussed in Orenduff] does not require that the petitioner be foreclosed from petitioning the Tax Court in regard to these additions to tax for fraud and that *there would be grave difficulties should respondent's motion to dismiss in this proceeding be granted because the net effect may well be to deprive the petitioner of a forum in which to have the opportunity to defend this claim,* i.e., the additions to tax for fraud. [*Id.* at 450–451; emphasis added.]

And, again showing sensitivity to the constitutional issues that would be created if the Government's theory in this case were accepted, the Tax Court added:

> Another factor leading us to our conclusion in this case is the possible constitutional problems that would be presented in construing section 6871 to preclude Tax Court jurisdiction in the situation where the taxpayer is effectively barred from obtaining a determination on the merits of a tax claim in the bankruptcy proceeding. Jamy Corp. v. Riddell, 337 F.2d 11 (9th Cir. 1964), but cf. Abel v. Campbell [334 F.2d 339 (5th Cir. 1964)]. As this Court in *Orenduff* stated: "The fact that our interpretation of the section [i.e., 6871] avoids this problem is support for our view of congressional intent." [*Id.* at 452.]

Much the same considerations as were expressed by the courts in the *Jamy, Orenduff* and *Prather* cases militate persuasively against the Government's position in the present case. This Court has found nothing in the legislative history of the relevant statutes nor any other reason which compels this Court to accept the result urged here by the Government and to face head-on the consti-

tutional issues raised by it.[32] The words of the statutes do not irresistably lead to either of the conflicting constructions urged in this case. But fairness, the pattern of congressional intent, and the avoidance of not inconsequential constitutional issues all weigh heavily in favor of the contentions of the taxpayer. Nor has the Government presented to this Court any reason to believe that the rejection of its position will in any way hamper its enforcement of the tax laws and its collection of the revenue.

■■ For the reasons stated hereinabove, this Court holds that section 6851 does not confer upon the Government independent assessment authority. The Government may, under that section, terminate a taxpayer's taxable year and may declare income taxes for the short-year period immediately due and payable. But any jeopardy assessment made for the short-year period must have as its source section 6861, and the requirements of that section may not be circumvented. Since the Government has not complied with those requirements and has failed to send the plaintiff a notice of deficiency which would enable him promptly to litigate in the Tax Court, an injunction will issue under section 6213(a), enjoining the Government from continuing in force and effect its assessment and levy against the plaintiff unless it promptly sends a deficiency notice to the plaintiff.

This holding will not in any way fasten upon the Government in this or in any other case an obligation which it cannot practically meet. The Government can (as it has in the past) utilize exactly the same techniques to determine a deficiency as it does in any case of a jeopardy assessment. The only import of this holding is that a short-year jeopardy taxpayer such as this plaintiff has the same access to the courts as every other jeopardy income taxpayer.

The basic purpose for creating the Board of Tax Appeals as a non-prepayment forum was succinctly stated in 1924:

The right of appeal after payment of the tax is an incomplete remedy, and does little to remove the hardship occasioned by an incorrect assessment. The payment of a large additional tax on income received several years previous and which may have, since its receipt, been either wiped out by subsequent losses, invested in nonliquid assets, or spent, sometimes forces taxpayers into bankruptcy, and often causes great financial hardship and sacrifice. These results are not remedied by permitting the taxpayer to sue for the recovery of the tax after this payment. He is entitled to an appeal and to a determination of his liability for the tax prior to its payment. [H. R.Rep. No. 179, 68th Cong., 1st Sess.

32. The Government correctly points out that a jeopardy taxpayer assessed under the provisions of section 6862 (which relates to the jeopardy assessment of taxes other than income, estate and gift taxes) has none of the procedural safeguards set forth in section 6861. The reason is simply that Congress has specifically limited the jurisdiction of the Tax Court to cases involving income, estate and gift taxes. Thus, the Tax Court has no statutory authority to redetermine, for example, an excise tax deficiency. This Court does not in any way suggest that section 6862 is unconstitutional; indeed, for the purposes of this opinion this Court assumes its constitutionality. But it does not follow that because Congress may rationally decide, as it has, that the expertise of the Tax Court does not extend to certain types of taxes, that congressional intent to discriminate among taxpayers paying the same type of tax is necessarily to be inferred. This Court has found no suggestion in the legislative history that such a latter discrimination has, at any time, been intended by the Congress, nor does there appear to be any clear rational basis on which to infer such an intention. Moreover, as the Supreme Court stated in Flora v. United States, *supra* 362 U.S. at 175 n. 38, 80 S.Ct., at 646, the effect of section 6862 on a taxpayer's judicial remedies is mitigated inasmuch as "excise tax assessments may be divisible into a tax on each transaction or event, so that the full-payment rule would probably require no more than payment of a small amount."

(1924), reprinted in Seidman, *supra* at 759.]

That statement still has controlling force today.

Counsel will prepare an appropriate order.[33]

---

33. Any order in this case will necessarily take into account the companion case of Schreck v. United States, et al., Civil No. 19577. *See also* Silbert, et al. v. United States, et al., 289 F.Supp. 318 (D.Md. 1968), and 282 F.Supp. 635 (D.Md.1968). In the opinion in 289 F.Supp. *supra*, there is reference to Civil No. 19577, and certain challenges made therein by Schreck.

*Id.* at 329. By agreement of counsel for the taxpayer and the Government, this separate case was instituted in order to avoid the jurisdictional bar presented by section 7421 of the Code. *See* the discussion at p. 1267 and at p. 1280, n. 26 of this opinion, *supra*, and the discussion in 289 F.Supp. 318, at 328–329.