Mark Bernard **LISNER** and Deborah E. Lisner, aka Deborah E. Gray, Plaintiffs,

v.

A. W. **McCANLESS**, District Director, Internal Revenue Service, Defendant.

Robert E. **SAWDEY**, Plaintiff,

v.

A. W. **McCANLESS**, District Director, Internal Revenue Service, Defendant.

Civ. Nos. 72–500, 72–548.

United States District Court,
D. Arizona.

Jan. 24, 1973.

Stephen E. Silver, Robert F. Lane, Phoenix, Ariz., for plaintiffs in Civ. No. 72–500.

William C. Smitherman, U. S. Atty., Joseph Raymond Keilp, Asst. U. S. Atty., Phoenix, Ariz., Martin Teel, Tax Div., U. S. Dept. of Justice, for defendant in Civ. No. 72–500.

A. Jerry Busby, of Debus, Busby & Green, Phoenix, Ariz., for plaintiff in Civ. No. 72–548.

William C. Smitherman, U. S. Atty., Fred C. Mather, Asst. U. S. Atty., Phoenix, Ariz., Martin Teel, Tax Div., U. S. Dept. of Justice, for defendant in Civ. No. 72–548.

## OPINION AND ORDER

COPPLE, District Judge.

These cases bring before the Court issues that are of fairly recent origin, and on which the courts have taken diverse approaches and reached different conclusions. In *Lisner* the parties allegedly left $15,600 in cash in a motel room which was subsequently levied upon by the Internal Revenue Service (IRS),[1] as

---

1. This cash was the subject of substantial publicity. A motel maid discovered the monies after the Lisners checked out, and several persons, including Mrs. Lisner

was their automobile. Lisner faces charges in state court for dealing in marijuana. In *Sawdey* the Arizona Department of Public Safety seized $986 from the petitioner upon his arrest for drug violations, although he had not been charged at the time of the hearing.[2] The IRS levied on the cash and on Sawdey's automobile.

The procedure in each case was for the IRS to terminate petitioners' tax years pursuant to Int.Rev.Code of 1954, § 6851 (IRC § 6851), and on successive days to assess the tax due and levy on petitioners' assets on the authority of various code sections. In Sawdey's case, the automobile was scheduled to be sold at auction within three weeks of the termination. All the relevant events took place within ten days of the termination. The Lisners are said to owe over $100,000, and Sawdey $5,635 in assessed taxes for the terminated years.

*Equity Jurisdiction*

■ Petitioners claim jurisdiction exists by virtue of the exception to the no-suit provision, IRC § 7421(a), established in Enochs v. Williams Packing & Nav. Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.

Ed.2d 292 (1962), or alternatively under IRC § 6213(a). *Enochs* allows a taxpayer to sue directly in district court where there is no adequate remedy at law for the irreparable harm caused by the imposition of a tax amounting to a penalty, and the government could not prevail under any reasonable view. The courts have applied the rule only sparingly. *See* Note, Jeopardy Assessment: The Sovereign's Stranglehold, 55 Geo.L.J. 701 (1967). The government's consistent position in these cases has been that no jurisdiction exists under any possible variation of the facts.[3]

■ Substantial memoranda have been submitted, and a hearing on the merits held in both cases. The two cases have been consolidated for consideration. Transcript of Hearing in *Sawdey*, at 29–30 (S.Tr. 29–30). No evidence was introduced at either hearing showing irreparable harm. Allegations in the pleadings that the assessments would deprive petitioners of counsel were not confirmed by testimony. The fact that levies on their property in substantial— even extraordinary—amounts will be made is not a sufficient allegation, without some evidentiary showing of harm.

using her maiden name, made application to the Scottsdale, Arizona, police for it. Whether the monies belong to the Lisners is not at issue here, as the IRS and the Scottsdale police have so treated it.

2. The Court intimates no view as to the merits of any criminal charge that has been or may be brought against petitioners. The discussion here is merely in the framework of the reported cases and the allegations in the pleadings.

3. Recognizing the presumption of correctness placed on the computation by the government, and the similar statutory presumption as to a finding of jeopardy, some courts have refused to intervene, regardless of the allegations. Lucia v. United States, 5 Cir., 447 F.2d 912, rehearing en banc granted, 451 F.2d 1024 (5th Cir. 1971) ; *see* Mersel v. United States, 420 F.2d 517 (5th Cir. 1970) ; Pinder v. United States, 330 F.2d 119 (5th Cir. 1964). Other courts have reached the merits and forced the IRS to provide some evidence that the statutory procedures

were followed, once the issue is fairly raised by the pleadings. Pizzarello v. United States, 408 F.2d 579 (2d Cir.), cert. denied, 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969) ; Lassoff v. Gray, 266 F.2d 745 (6th Cir. 1959) ; United States v. Bonaguro, 294 F.Supp. 750 (S.D.N.Y.1968), aff'd sub nom. United States v. Dono, 428 F.2d 204 (2d Cir.), cert. denied, 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 59 (1970). Where the government shows facts which would allow it to prevail, the case does not of course come within the *Enochs* rule. Thrower v. Miller, 440 F.2d 1186 (9th Cir. 1971) (distinguishing *Pizzarello*). Some courts rejecting injunctive relief have not dealt adequately with the arguments in *Pizzarello*. *E.g.*, Iannelli v. Long, 333 F.Supp. 407 (W.D.Pa.1971), in which that case was characterized as being based on illegal search and seizure, and in which the court placed the seized assets in trust pending the outcome of the criminal prosecution.

Thus the first prong of *Enochs* jurisdiction fails, and an attack on the method of computation is foreclosed.[4] *Pizzarello v. United States*, 408 F.2d 579 (2d Cir. 1969).

### Statutory Jurisdiction

 Jurisdiction in this Court therefore exists, if at all, pursuant to IRC § 6213(a).[5] That section provides, "Notwithstanding the provisions of section 7421(a), the making of such [deficiency] assessment . . . may be enjoined by a proceeding in the proper court." A reasonable reading of section 6213(a) makes clear that section 6861 jeopardy assessments are not removed from its limitation, but that in jeopardy situations the differing procedural steps are incorporated by reference. Petitioners claim that the failure to provide a deficiency notice, IRC § 6861(b), allows injunctive relief. The government strenuously argues here, as it has elsewhere, that an assessment following termination under section 6851 is not made pursuant to section 6861. It first suggested that the assessment was pursuant to section 6851, then abandoned that in favor of section 6201(a), the general assessment authority.

This case is controlled by Schreck v. United States, 301 F.Supp. 1265 (D.Md. 1969); *accord,* Clark v. Campbell, 341 F.Supp. 171 (N.D.Tex.1972). The necessity of providing the jeopardy taxpayer with at least minimal procedural safeguards under section 6861 is well discussed in Judge Kaufman's detailed opinion in *Schreck*; it is not necessary to repeat the arguments here. The Court declines to follow Williamson v. United States, No. 17992 (7th Cir. Apr. 8, 1971), in which the possibility of section 6861 use is not discussed, and which was determined on *Marchetti-Grosso* grounds.[6] That *Schreck* properly determines section 6861 to be the companion assessment section in short-year terminations is shown as well by a brief analysis of the code structure.

 It is axiomatic that a true code—which Congress intended here to create—is primarily different from stat-

---

4. As the decision by the director to terminate under IRC § 6851 and assess is usually done in a combined procedure, it is easy to confuse the elements of decision that may support one or another ground of action. Those elements relating to questions of jeopardy relate to the finding required by section 6851 or 6861. A separate question is whether the computation amounts to a penalty. To challenge either, the *Enochs* test must first be met. In *Lisner,* the computation was based on information from reliable sources that he was trading in marijuana to the extent of $200,000 per month for two specific months; costs of supply were deducted to obtain net profit. L.Tr. 63–72. No spreading of a sample profit over a long period, as in *Pizzarello,* was done, but no tangible evidence of the level of dealing was produced. In *Sawdey,* the information was that a five-member ring of which he was allegedly a part was "capable" of dealing in some 800 pounds of marijuana a month, which the IRS reduced to 250 pounds, computing Sawdey's share as 50 pounds. S.Tr. 69–72. As to the finding of jeopardy, which is presumptive but not conclusive, reliance in *Lisner* was placed on the evidence of drug dealing, high mobility and other factors. L.Tr. 33–34, 63–72, 93–94. In *Sawdey* only his arrest seems to have triggered the termination. S.Tr. 79–85. All of these issues are foreclosed by the absence of equity jurisdiction. Clark v. Campell, 341 F. Supp. 171 (N.D.Tex.1972).

5. This is one of a growing number of cases in which the government is using the tax laws as an aid in its fight of organized crime, especially the narcotics and marijuana traffic. *See* The Arizona Republic, Oct. 15, 1972, § B, at 1, col. ——. In many similar cases the courts have taken jurisdiction on the basis that invasion of fifth amendment rights in pending or future criminal actions would result. United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971); Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). That element is not involved here.

6. See note 5 *supra*.

utes in that a comprehensive, cross-related scheme of laws is presented. No one section can be interpreted without reference to its place in the scheme of things: witness the numerous cross-reference sections written into the Internal Revenue Code of 1954. Ordinarily, the procedure for collection of income tax would be for the taxpayer to file an annual return and to pay the amount due. At this point an "ordinary assessment" is made by entering on the rolls the tax reported and crediting the amount paid. IRC §§ 6201(a), 6203. *See generally* 9 J. Mertens, Jr., Law of Federal Income Taxation §§ 49.100–.103 (J. Malone, et al., eds. 1971 rev.) (hereinafter Mertens); Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). Thus section 6201(a) *does* provide assessment authority; that authority is limited on its face, however.[7] As a general matter, taxes beyond those admitted by the taxpayer cannot be assessed except as a deficiency. *Compare* IRC § 6201(a)(1) *with id.* §§ 6201(d), 6211(a). *See* 9 Mertens §§ 49.128, 49.-187; *cf.* IRC § 6204(b).

Jeopardy cases are either a part of this general scheme, or they represent yet a third category of assessment in which all the rules are waived. The government of course prefers the latter interpretation and would have the Court rely on the absolute power of the sovereign to collect taxes in such a manner. The point is that it is doubtful that Congress intended that effect on its code structure. Ordinarily one files a return

at year's end, but the period may be shortened by jeopardy (section 6851). Ordinarily one is forced to pay a contested amount only after an opportunity to approach the Tax Court and to have procedural safeguards against collection, but assessment can take place immediately if there is jeopardy (section 6861). To imagine that Congress, which enacted these two sections under the general title "Subchapter A—Jeopardy," intended the sections to be used as "wild cards" without reference to its carefully constructed collection scheme, is to ignore plain english. *See generally* 9 Mertens §§ 49.81, 49.126–.137. If, as the government concedes, section 6851 authorizes no assessment in a jeopardy case, then what different type of jeopardy is controlled by the next section, "6861 Jeopardy Assessment"?[8]

As a further example, Mertens, the recognized authority, supports this view. *See Id.* §§ 49.145, 49.154. Nowhere in its discussion of collection procedures is there any suggestion of an assessment procedure in addition to ordinary (IRC § 6201(a)), deficiency (IRC § 6213), or jeopardy (IRC § 6861). Jeopardy assessment is consistently discussed in the deficiency context. 9 Mertens §§ 49.-126–.169.

■ It is therefore clear that a termination under section 6851 is a substitute for the ordinary filing requirement of section 6072, both of which are controlled by sections 6001, 6011–6017. *See* IRC § 443(a)(3). If an assessment may

---

7. In this sense the IRS *has* "utilized Section 6201 for 'years'". *See* Clark v. Campbell, *supra*, 341 F.Supp. at 175. It should be noted that the definitional structure in this area is less than perfect. An assessment is the entering upon the rolls of an amount due from the taxpayer, and has the force of a judgment. 9 Mertens § 49.186; *see* note 9 *infra*. Whether or not certain procedural rights attach therefore depends on the underlying nature of the assessment: "ordinary," deficiency or jeopardy. The cases do not always maintain this important semantic distinction. "Stated simply, a 'deficiency' is the

excess of the amount of the tax [determined due by the IRS] over the amount of tax reported by the taxpayer." *Id.* § 49.-128 at 236.

8. The government position requires that Congress have intended one type of jeopardy for terminating a tax year and another type of jeopardy limited to the question of payment of a deficiency not yet assessed. Yet a finding of jeopardy under section 6851 clearly establishes a similar finding under section 6861. Moreover, the terms of the latter section are mandatory: "he shall . . . immediately assess."

indeed be made under section 6851, it is the "ordinary" assessment based on the return prepared by the taxpayer or the IRS.[9] IRC §§ 6020, 6201(a)(1). That does not give rise to immediate collection of *contested* taxes, which by definition are deficiencies. IRC § 6211; *see* 9 Mertens § 49.128. Section 6861 is the *only* assessment authority in the Code designated "jeopardy." The attempt of the government to bypass the procedural requirements of section 6861 in this and other cases [10] has led it on a path of convolutions and strained interpretations, instead of an attempt to find order in a highly structured code.[11] The Tax

9. The government has not given a detailed explication of its position in terms of code provisions, but it seems to run something like this:

In an ordinary case, an assessment is made by entering on the assessment rolls (Form 23A) the amount of tax indicated on the taxpayer's return (Form 1040) opposite his serial number for that year. 9 Mertens § 49.101. The payment is then credited, and the accumulated entries signed at the end of each month. This is the assessment contemplated by section 6201(a)(1). Form 23A, used for entering payment as well, is considered the requisite notice and demand pursuant to section 6303. If an additional tax is determined to be due, that amounts to a deficiency, and may be assessed only under sections 6211–6215. IRC §§ 6201(d), 6204(b). Mere mathematical correction of figures presented by the taxpayer is not a deficiency. IRC §§ 6204(a), 6213(b)(1); see 9 Mertens § 49.102. Any tax thought due by the IRS but not reported by the taxpayer is a deficiency, however. IRC § 6211.

By the government's contention, if the taxpayer prepared a short-year return, as he is required to do by section 443(a), then it would constitute authority for a section 6201 assessment. Since the taxpayer has not made such a return, the IRS is empowered to do it for him, IRC § 6020(b), and that return becomes the one from which it assesses "all taxes determined by the taxpayer or by the Secretary or his delegate." IRC § 6201(a)(1). No deficiency therefore exists, and the restrictions of sections 6201(d), 6204(b) do not become operative. Levy may be made immediately after notice, without the time delays specified in section 6331(a).

In addition to the code-structure arguments in text, the difficulty with this position is that no real opportunity to prepare a return was given the taxpayers here. In one sequential operation the IRS terminated the tax years, mailed the notices of termination, determined the amount of assessment, and entered the assessment. The next day the levies were made. While the code contemplates notice of assessment and demand effective upon mailing, IRC § 6303, it is undisputed that Lisner, for example, obtained actual notice of the *termination* only upon levy. It is doubtful that this constitutes a failure to make return "at the time prescribed therefor," IRC § 6020(b), when the notice and demand that should "be given to the taxpayer," IRC § 6851(a), is sent by mail instead. If there were any real opportunity for the taxpayer to "fail" to make a return, the goverment's argument might have some merit. The IRS Manual contemplates such an opportunity in just these circumstances. Manual Supp. 42–G–275, §§ 7.10, 9.06–.10 (Dec. 28, 1971); *Id.* 45–G–160 (Rev. 1), §§ 3.05, 4.03 (May 19, 1971).

Furthermore, there is no question that the deficiency procedures are meant to cover those cases in which the amount of taxes are contested. 9 Mertens § 49.126. Thus the additional procedural safeguards. These cases are akin to those where a return is filed but an accompanying letter denies liability for the tax. Collection there is by deficiency assessment. See 9 Mertens §§ 49.128, 50.10.

10. See Clark v. Campbell, *supra*; Schreck v. United States, *supra*, 301 F.Supp. at 1276.

11. The practical arguments are against the government as well. What harm can exist to the collection of revenue by allowing a deficiency notice to issue *after* assessment? The taxpayer's assets are in the hands of the government. The IRS can continue to levy to enforce the assessment. In exchange, the right to sell is curtailed, and ultimately a formal deficiency must be noticed to the taxpayer. Demanding as well the right to sell (in *Sawdey*) and/or a possibly prohibitive payment (in *Lisner*) before an opportunity to adjudicate the merits lends credence to the *Enochs* claim of harassment.

Court has jurisdiction to determine the tax for the terminated year. IRC §§ 6861, 7451; *see* 9 Mertens § 50.10.

A jeopardy taxpayer therefore loses the calendar year payment period, and the delay of assessment and levy, but these are replaced by other procedural protections:

"1. The IRS is required to send a deficiency notice within sixty days after the assessment, thus enabling the jeopardy taxpayer to litigate in the Tax Court. [IRC] § 6861(b). If the IRS does not comply with this requirement, the assessment and levy . . . may be enjoined by the federal courts. . . .

"2. The jeopardy taxpayer can stay all collection action pending the Tax Court's decision if he is able to post an adequate bond. § 6863(a).

"3. Property seized pursuant to the assessment may not, in general, be sold during the pendency of litigation in the Tax Court. § 6863(b)(3)(A).

"4. The IRS 'may' abate the jeopardy assessment . . . ."

Schreck v. United States, *supra*, 301 F. Supp. at 1279 (footnote omitted). No deficiency notices have been furnished by the IRS. As stated in *Schreck, supra,* at 1284:

"Since the Government has not complied with those requirements and has failed to send the plaintiff a notice of deficiency which would enable him promptly to litigate in the Tax Court, an injunction will issue under section 6213(a), enjoining the Government from continuing in force and effect its assessment and levy against the plaintiff unless it promptly sends a deficiency notice to the plaintiff.

"This holding will not in any way fasten upon the Government in this or in any other case an obligation which it cannot practically meet. The Government can (as it has in the past) utilize exactly the same techniques to determine a deficiency as it does in any case of a jeopardy assessment. The only import of this holding is

that a short-year jeopardy taxpayer such as this plaintiff has the same access to the courts as every other jeopardy income taxpayer."

It is ordered that plaintiffs shall submit within five (5) days a form of judgment for approval by the Court.