**Elbert WILLIAMS, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. No. LV-2025.**

United States District Court, D. Nevada.

Nov. 15, 1973.

Raymond E. Sutton, Las Vegas, Nev., for plaintiff.

V. DeVoe Heaton, U. S. Atty., Las Vegas, Nev., for defendant.

## OPINION

ROGER D. FOLEY, Chief Judge.

### FACTS

This is an action seeking preliminary injunction against the assessment and collection of federal taxes and for the return of monies seized as assessed taxes for a terminated tax period. Jurisdiction is asserted under 28 U.S.C. §§ 1340 and 1346(a)(1) and 26 U.S.C. §§ 6213(a) and 7421(a).

On information obtained from informants and police surveillance, the Las Vegas Police Department (LVPD) obtained a search warrant and, after no response to their knock, forcibly entered plaintiff's apartment in search of narcotics on the evening of March 9, 1973. Plaintiff arrived at his apartment while the search was in progress. The officers found a capsule and a "30¢ bag" of heroin, a gun, and some cash in the apartment and a large amount of cash on plaintiff's person. They arrested plaintiff for narcotics violations (including sale of heroin) and for possession of a firearm by an ex-felon; and they seized the items noted. The money totaled $4,113.00.

As had been the procedure for some months prior in narcotics arrests where large amounts of cash are also found, the LVPD notified the Internal Revenue Service of the case. On March 10, 1973 (a Saturday), Mr. Burns, an IRS officer, prepared a tax assessment against plaintiff for the period January 1, 1973, through March 9, 1973, totaling $7,721. This was based upon multiple hearsay from the LVPD that plaintiff had been selling approximately $900 worth of narcotics a day and, apparently, plaintiff's failure to file a return for the years 1969 through 1971. Burns also prepared (1) a notice of seizure, (2) a notice of levy, and (3) a letter dated March 10, 1973, notifying plaintiff that pursuant to IRS Code and Regulations § 6851 plaintiff's taxable period 1/1/73 to 3/10/73 was immediately terminated and the tax due. The grounds given in the letter were that plaintiff was attempting to place property "beyond the reach of the government either by removing it from the United States, or by concealing it, or by transferring it to other persons". Documents (1) and (2) were signed by Burns, served on the LVPD and the IRS obtained possession of the funds on March 10, 1973.

Although there is some confusion, the defendant's counsel admits that the

third document, the letter to plaintiff, was not mailed until March 12, after seizure of the funds by the IRS. (RT for oral hearing, p. 81.) Further, the letter to plaintiff was signed by a Mr. Moody, another IRS officer, at a time period when there is some question as to Moody's authority as Acting District Director. Because of these procedural defects, counsel for defendant stated that the March 10 assessment was invalid (RT pp. 82, 84), and the original seizure illegal (RT p. 84). Following filing of the instant complaint, however, the IRS "abated" the March 10 assessment and entered a new assessment and termination on April 27. This latter assessment was, essentially, on the same factual data as the first assessment (but substituted a "married" standard deduction for a "single" deduction previously made), and was served personally on plaintiff. Throughout, the funds remained in possession of the IRS. Defendant's counsel contends this procedure is completely valid. (RT p. 84.)

Plaintiff, a 65-year-old illiterate male Negro, stated at oral hearing that he coalesced the funds from wages, social security payments, gambling winnings, money collected from his employer's renters, and monetary gifts. (RT 98–104.) His complaint alleges that the money was illegally and erroneously assessed and collected, in violation of due process and 26 U.S.C. § 6861(c). Claiming irreparable harm, he prays for injunctive relief. The defendant has moved to dismiss.

## ISSUES

1. Should defendant's motion to dismiss be granted?

2. Should plaintiff be granted a preliminary injunction ordering the IRS to cease assessment and collection for the terminated tax period and to return the monies seized?

## CONCLUSIONS

1. No.

2. The IRS should be enjoined from continuing in force and effect its assessment and levy against the plaintiff unless it promptly sends a deficiency notice to plaintiff. The IRS should not, however, be ordered to refund the monies seized.

## DISCUSSION

While other questions are presented, resolution of this case is ultimately dependent upon whether the assessment authority, after the termination of the taxable year under 26 U.S.C. § 6851, is found in the general assessment provision of 26 U.S.C. § 6201(a) or the jeopardy assessment provision of 26 U.S.C. § 6861. This issue of statutory interpretation has recently sparked a significant controversy among the district courts and only in two circuits does there appear appellate discussion of the problem.

Plaintiff is seeking an injunction restraining defendant from assessing, collecting and retaining monies pursuant to a terminated taxable period under 26 U.S.C. § 6851. 26 U.S.C. § 7421 of the Code, however, states that "no suit for the purpose of restraining the assessment or collection of any tax (may) be maintained in any court by any person . . . ." except in certain instances. Plaintiff seeks to bring himself within the statutory exception of 26 U.S.C. § 6213(a) and the judicial exception of Enochs v. Williams Packing and Navigation Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L. Ed.2d 292 (1962), in an effort to avoid § 7421. 26 U.S.C. § 6213(a) allows for injunctive relief against the assessment, levy or collection of a tax when the IRS has not sent the taxpayer a deficiency notice as required by the tax laws. See United States v. Ball, 326 F.2d 898, 902–903 (4th Cir. 1964). Plaintiff argues that the IRS was required by § 6861 to send him a deficiency notice within 60 days of the assessment and, failing this requirement, he is entitled to § 6213(a) relief. The Government argues that § 6861 is inapplicable, that an assessment for a § 6851 terminated year is not a "deficiency", that § 6201(a) is the assessment authorization applicable here and it requires no defi-

ciency notice, concluding that no deficiency notice is required. Because the judicial exception of *Enochs* is unavailable to this plaintiff (see discussion below), the statutory issue is unavoidable.

Before discussing the specific issues presented by this case, it should be noted that although defendant has filed a motion to dismiss on the grounds that this Court lacks jurisdiction, it is actually based on an assertion that plaintiff has failed to state a claim on which relief can be granted under Rule 12(b)(6), F.R.Civ.P. See Parrish v. Daly, 350 F. Supp. 735 (S.D.Ind.1972) (characterizing the same issue and contentions). The instant case will thus be discussed in the latter context.

1. *The Judicial Exception to § 7421 is Unavailable to this Plaintiff*

██ ██ In Enochs v. Williams Packing and Navigation Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), the Supreme Court ruled that § 7421 is inapplicable (1) "if it is clear that under no circumstances could the Government ultimately prevail", and (2) if the traditional requisites for equitable relief are otherwise present. 370 U.S. at 7, 82 S. Ct. at 1129. Plaintiff is incorrect when he argues that all *Enochs* requires is a showing that the Government acted in "bad faith".

██ The Ninth Circuit has rephrased the first portion of the *Enochs* test to require the taxpayer to show that "under the most liberal view of the law and facts the United States cannot establish its claim . . ." Enterprises Unlimited, Inc. v. Davis, 340 F.2d 472, 474 (9th Cir. 1965), citing Walker v. Internal Revenue Service, 333 F.2d 768, 771 (9th Cir. 1964). The role of the District Court in considering factual disputes presented in an action to enjoin assessment and collection of a tax is thus severely limited. While there exists an apparent split among the circuits regarding a District Court's ability to determine factual issues in such a proceeding [compare Bauer v. Foley, 404 F.2d 1215 (2nd Cir. 1968) on rehearing, 408

F.2d 1331 (2nd Cir. 1969) (Court is to decide whether wife-taxpayer's signatures on returns were result of forgery or duress), with Trent v. United States, 442 F.2d 405, 406 (6th Cir. 1971) (rejecting *Bauer* and stating:

> "To hold an evidentiary hearing at this point would be to circumvent the long-standing procedure . . . for litigating the merits of these cases (in the Tax Court).")],

the better view relegates all but spurious factual disputes to the appropriate court in an action for refund (26 U.S.C. § 7422) or redetermination of a deficiency (§ 6213(a)). (See Miller v. Standard Nut Margarine, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422, predecessor to *Enochs* and only case in which the Court upheld an injunction in spite of § 7421. Plaintiff's product had previously been ruled exempt from tax sought to be imposed. See Enterprises Unlimited, Inc. v. Davis, supra, where factual dispute exists, *Enochs* relief inapplicable.) The Court, in *Enochs* itself, appears to contemplate such an approach, stating:

> "We believe that the question of whether the Government *has a chance of ultimately prevailing* is to be determined on the basis of the information available to it at the time of suit." (Emphasis added.)

370 U.S. at 7, 82 S.Ct. at 1129. The clear inference is that the District Court, at the time of the injunction suit, is to determine, on the basis of information available to the Government at that time, whether the Government conceivably may prevail in a later action by the taxpayer in District Court (see 370 U.S. at 7, 82 S.Ct. 1125) or in Tax Court.

██ Thus viewed, the facts presented at oral hearing remove this case from the ambit of *Enochs* authorized relief. At the time of this suit, the Government is possessed of information that plaintiff had been under surveillance and undercover investigation for sale of narcotics, had been arrested under circumstances tending to substantiate such a charge, and at the time of arrest plain-

tiff was carrying a large amount of cash. That plaintiff testified that the money came from a variety of other sources, including gambling, serves only to create a factual dispute to be decided in a more appropriate forum. The size and validity of the terminated tax year assessment is also contested by plaintiff. The amount assessed was based upon information supplied by the LVPD and the issue is, again, a factual dispute which this Court cannot dispose of as spurious. The validity of the assessment, in the absence of unusual Miller v. Standard Nut Margarine, supra, type circumstances, is an issue not generally resolvable under the *Enochs* test. In the instant case, the testimony concerning the experience of the IRS with concealment of funds derived from narcotics violation (RT p. 79), coupled with the established principle that a finding by the District Director that a tax is prejudiced is not subject to judicial review (see Lloyd v. Patterson, 242 F.2d 742, 743–744 (5th Cir. 1957); Homan Mfg. Co. v. Long, 242 F.2d 645, 655 (7th Cir. 1957); Shelton v. Gill, 202 F.2d 503 (4th Cir. 1953); Schreck v. United States, 301 F.Supp. 1265, 1279 (D.C. Maryland 1969)), renders the substantive finding of jeopardy unimpeachable under the minimal *Enochs* standard of review even if plaintiff's assertions as to the source of the funds are ultimately borne out. Plaintiff fails to meet the first part of the *Enochs* test. Failure to meet one of the two jurisdictional tests is sufficient to bar relief under *Enochs*. See Walker v. Internal Revenue Service, 333 F.2d 768, 772 (9th Cir. 1964).

■ Further, plaintiff does not meet the second part of *Enochs* in that he has an adequate remedy at law. Regardless of whether plaintiff's theory that he is entitled to statutorily provided injunctive relief under § 6213(a) because of a failure on the part of the Government to follow the procedural requirements of § 6861 is meritorious (discussed below), he has not established that he will suffer irreparable harm as a result of the seizure of monies in this case. Plaintiff

can point to no hardship caused by the collection. (See RT pp. 114–115.) Plaintiff may, in such circumstances, simply wait till the end of the taxable year and either (1) pay the assessment or perhaps secure an IRS determination of overpayment and sue for a refund in District Court, or (2) obtain a notice of deficiency and litigate in the Tax Court without any advance payment. 26 U.S. C. §§ 6212(a), 6213(a), 6511, 6532 and 7422; see Flora v. United States, 357 U.S. 63, 75, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), on rehearing 362 U.S. 145, 175, 80 S.Ct. 630, 4 L.Ed.2d 623 (1959); Irving v. Gray, 479 F.2d 20, 24 n. 6 (2nd Cir. 1973), (discussed below); Missouri Valley Intercollegiate Athletic Assn. v. Bookwalter, 276 F.2d 365 (8th Cir. 1960); Schreck v. United States, 301 F.Supp. 1265, 1284 (D.C. Md.1969); Parrish v. Daly, 350 F. Supp. 735, 737 (S.D.Ind.1972). An equity basis for injunctive relief against the collection of a tax is not provided by a mere allegation of irreparable harm (*Bookwalter*, supra, 276 F.2d at 368 and cases cited therein), nor by the mere fact that the tax is collected prior to liability adjudication. (See *Parrish*, supra, 350 F.Supp. at 737.) The *Enochs* exception is not applicable here. See Enterprises Unlimited, Inc. v. Davis, 340 F.2d 472, 474 (9th Cir. 1965); Pizzarello v. United States, 408 F.2d 579 (2nd Cir. 1969); Lisner v. McCanless, 356 F. Supp. 398, 400–401 (D.Ariz.1973).

2. *Is Injunctive Relief Available under Section 6213(a)?*

This case brings to this Court a current division of judicial reasoning and opinion. Following the articulate decision of District Judge Kaufman in Schreck v. United States, 301 F.Supp. 1265 (D.C.Md.1969), the contours of the basic issue were clearly delineated. The debate that ensued has yet to be authoritatively resolved.

"(T)he real issue in this case is whether a taxpayer has a right to have adjudicated in the Tax Court the validity of an assessment in a jeopardy situa-

tion made for a short-year period." Schreck v. United States, supra, at p. 1268. To meet the jurisdictional requirements of the Tax Court, the taxpayer must secure a "ticket", a deficiency notice. See DaBoul v. Commissioner, 429 F.2d 38 (9th Cir. 1970); Corbett v. Frank, 293 F.2d 501, 502–503 (9th Cir. 1961). Section 6851 of the Code authorizes termination of a taxable period but does not confer in itself an assessment power, nor does it require that a deficiency notice be sent to the taxpayer. (In Rinieri v. Scanlon, 254 F.Supp. 469 (D.C.N.Y.1966), the Government conceded that § 6851 confers no assessment authority, but in *Schreck* it unsuccessfully argued the reverse. *Schreck*, supra, 301 F.Supp. at 1271, 1284. The Government has since abandoned its position in *Schreck* and it is now uniformly agreed no such authority is conferred by that section. See Irving v. Gray, 479 F. 2d 20, 23 (2nd Cir., 1973); Parrish v. Daly, 350 F.Supp. 735, 736 (S.D. Ind.1972); Clark v. Campbell, 341 F. Supp. 171, 174–175 (N.D.Tex.1972).) If, as the Government contends, the assessment authority for § 6851 is found in § 6201(a), no deficiency letter is required to be sent. Irving v. Gray, supra; Williamson v. United States, 31 Am.Fed.Tax R.2d 73–800 (7th Cir. 1971). If, however, the assessment authority for § 6851 is to be found in § 6861, as plaintiff contends, the taxpayer is entitled to a deficiency notice "ticket". *Schreck*, supra, 301 F.Supp. at p.

1284; Lisner v. McCanless, 356 F.Supp. 398, 404 (D.Ariz.1973) (appeal pending); Clark v. Campbell, supra, 341 F. Supp. 171, 175–176 (N.D.Tex.1972). Under plaintiff's theory, the District Court may enjoin the Government from continuing its levy and assessment where a deficiency notice has not been sent to plaintiff within 60 days of the jeopardy assessment, at least until such notice is supplied (26 U.S.C. §§ 6861, 6213(a)). Under the Government's theory, § 6213(a) is inapplicable, 26 U.S.C. § 7422(a) is controlling, and the instant complaint must be dismissed. Irving v. Gray, supra.

Having outlined the statutes that comprise the problem, the contrasting judicial views regarding which assessment provision is to be applied can intelligibly be isolated:

1. While historical analysis will support a conclusion that the assessment authorization and procedural limitations of § 6861 are to be applied to § 6851 (see the thorough discussion in *Schreck*, supra, 301 F.Supp. at 1268–1275), a conclusion that it is § 6201(a) which authorizes assessments for § 6851 actions is equally tenable (see Irving v. Gray, supra, 479 F.2d at 24; and see also *Schreck*, supra, 301 F.Supp. at 1275, where Judge Kaufman admits "in all candor" that various interpretations can be accorded in piecing together this "complex and experimental legislation." [1])

1. The view accepted in *Irving* and argued by the Government here points to the fact that the predecessors to §§ 6851 and 6201(a) existed eight years prior to the enactment of § 6861 and were repeatedly re-enacted without change as support for the position that § 6861 was not intended to affect or control actions under § 6851. Irving v. Gray, 479 F.2d 20, 24 (2nd Cir., 1973); Defendant's Memorandum in Support of Motion to Dismiss, p. 13. The Court in *Schreck* noted this view, but concluded in light of an apparent legislative intent to mitigate harshness and abuse under jeopardy assessments, that:

"... Instead, Congress seemed to be saying to the IRS: Before the 1926 Act, you could use the predecessor of section

6851 to terminate the taxable year and accelerate the due date of payment, but to assess you had to use the general authorizing statute. Now, in the 1926 Act, you may still use the predecessor of section 6851 for the same purposes as before, but to assess you must utilize the statute authorizing jeopardy assessments, i. e., the predecessor of section 6861."

Schreck v. United States, 301 F.Supp. 1265, 1273 (D.C.Md.1969) (footnotes omitted).

The IRS has not been uniform in its determination of the proper statute under which to proceed. See id., at 1276. And

"(t)he attempt of the government to bypass the procedural requirements of section 6861 ... has led it on a path of convolutions and strained interpre-

2. "The jeopardy assessment authority in section 6861 is, and always has been, limited to 'deficiencies.' " *Schreck,* supra, at 1274. On the one hand are decisions finding the definition of "deficiency" contained in 26 U.S.C. § 6211,[2] read in conjunction with Treasury Regulation § 301.6211–1(a),[3] broad enough "to cover assessments made for a short year, whether or not a return is filed." *Schreck,* supra, at 1277; Clark v. Campbell, 341 F.Supp. 171, 175–176 (N.D.Tex.1972). "The amount assessed after the year is terminated would constitute a 'deficiency.' " *Campbell,* supra, at 176. On the other hand are decisions finding that such assessments cannot be considered a deficiency as defined by § 6211. Irving v. Gray, supra, 479 F.2d at 24; Williamson v. United States, 31 Am.Fed.Tax R.2d 73–800 (7th Cir. 1971); Ludwig Littauer & Co. v. Commissioner, 37 B.T.A. 840 (1938). In Williamson, the Court stated:

> ". . . (Section 6211) defines a deficiency as the amount by which the 'tax imposed' exceeds the amount shown on the tax return. The assessment in this case was not an imposed tax, but merely an amount which the I.R.S. believed justified the termination of the taxable year. Since no return had been filed at the date of the assessment, no deficiency was determinable."

Neither interpretation is compelled by the statutory language, both interpretations are plausible and supportable semantically.

3. The third and final area of contention among the courts involves the safeguards and remedies available to a taxpayer subjected to a § 6851 termination of the taxable period and seizure of his property. Important to stress at this point is that even if § 6861 is held applicable the Government is not prejudiced in its efforts to seize property when it feels a revenue collection may be in jeopardy: the Government may still make a jeopardy assessment and levy upon property, but it must provide a notice of deficiency within 60 days of the assessment. 26 U.S.C. § 6861; *Schreck,* supra, 301 F.Supp. at 1279. Thus the Government retains "rather awesome" power under § 6861. *Schreck,* supra, at 1278. As noted previously, ". . . (T)he real focus of the present case is what rights, if any, this plaintiff has . . . ." Id. The *Schreck* view would allow plaintiff a deficiency notice "ticket" to the Tax Court at the time of the assessment. Under this view, if the taxpayer is unable to post the bond necessary to stay levy upon his property (26 U.S.C. §§ 6851(e), 6863(a)),[4] he may, in

---

tations, instead of an attempt to find order in a highly structured code."
Lisner v. McCanless, 356 F.Supp. 398 (D. Ariz.1973).

2. Section 6211 defines deficiency as:
". . . the amount by which the tax imposed by subtitles A or B exceeds the excess of—
(1) the sum of
    (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
    (B) *the amounts previously assessed* (or collected without assessment) as a deficiency, over—
(2) the amount of rebates, as defined in subsection (b)(2), made." (Emphasis added.)

3. "*If no return is made* . . . for the purpose of the definition 'the amount shown as the tax by the taxpayer upon his return' shall be considered zero. Accordingly, in any such case, *if no deficiencies with respect to the tax have been assessed,* or collected without assessment, and no rebates with respect to the tax have been made, *the deficiency is the amount of the tax imposed* by (the income, estate, or gift tax laws)." (Emphasis added.) Treas.Reg. § 301.-6211–1(a).

4. The Government argues that the fact that both § 6851 and § 6861 contain bond provisions indicates that Congress did not intend that § 6861 procedures should be applied to an assessment made after a § 6851 termination. Congressional intent, however, is not so easily discerned. See the discussion in Schreck v. United States, supra, 301 F.Supp.

general, prevent sale of most types of property seized by the IRS while he litigates the propriety and legality of the assessment. 26 U.S.C. § 6863(b)(3)(A).[5] The opposing view would delay plaintiff's access to the Tax Court until the end of the normal tax year (Irving v. Gray, supra, 479 F.2d at 25), a time when he would also, conceivably, have access to the District Court. (Id.) In the interim, however, the *Irving* view apparently would allow the Government to sell property seized and apply the proceeds to the assessment if the taxpayer is unable to post the bond provided for in § 6851(e). The harshness occasioned by this latter approach has prompted concern for the serious constitutional questions of equal protection and due process raised by treating § 6851 and § 6861 jeopardy taxpayers differently. See *Schreck*, supra, 301 F.Supp. at 1281; Clark v. Campbell, supra, 341 F.Supp. at 176.

If this Court is to meaningfully resolve this issue in the instant case, a sound basis for decision must be found in the above judicial debate. No such footing emerges from the, at best, equivocal subtleties and nuances of historical and statutory interpretation so exhaustively explored elsewhere. Rather, the basis for analysis lies in the gravamen of that debate: the protection to be accorded the Government as contrasted against the protection and rights to be accorded the taxpayer. It is within this framework that the "issue must be considered against the background of congressional intent." *Schreck*, supra, 301 F.Supp. at 1278.

Clearly, the interest of the United States in its right to assure collection of the revenue by jeopardy assessments is of paramount importance. Ginsburg v. United States, 278 F.2d 470 (1st Cir. 1960), cert. denied 364 U.S. 878, 81 S. Ct. 166, 5 L.Ed.2d 101 (1960). In consideration of the necessities of the jeopardy situation, Congress has granted the IRS authority to act immediately if the IRS believes delay will thwart such collection. 26 U.S.C. §§ 6851, 6861. Still insuring that assessment and collection remain swift in § 6861, Congress nevertheless afforded the jeopardy taxpayer under that section two rights as a check against IRS abuse of its summary power: (1) the right to a deficiency notice such that he is enabled to litigate in the Tax Court and prevent sale of his property during that litigation (26 U.S.C. §§ 6861(b) and 6863(b)(3)(A)), and (2) the right to stay all collection action pending a Tax Court decision by payment of an adequate bond (26 U.S.C. § 6863(a)). The second right has been described as "illusory" in the case of a taxpayer who does not have assets far in excess of the assessment (*Schreck*, supra, 301 F.Supp. at 1279, citing Gould, Jeopardy Assessments: When They May Be Levied and What To Do About Them, N.Y.U. 18th Institute on Federal Taxation 937, 944–45 (1960)), and a "mere mockery" to a taxpayer whose entire assets have been seized (Kimmel v. Tomlinson, 151 F. Supp. 901 (S.D.Fla.1957), quoted by the court in *Schreck*, supra, 301 F.Supp. at 1279 n. 25). Thus, the only true substantive right is access to the Tax Court and the concomitant sale restrictions during that litigation. *Schreck*, supra, at 1280. At one point the IRS recognized that the same procedures should be followed in processing § 6851 and § 6861

---

at 1268–1275. The IRS itself at one time believed that § 6861 procedures were meant to apply to § 6851 termination assessments. See note 6, infra. The vagueness of Congressional intent, then, cannot be dispositively clarified from the mere overlap of statutory bond provisions.

5. Such sales are prohibited except: (a) if the taxpayer consents to the sale; (b) if the property is perishable; and (c) if the IRS "determines that the expenses of conservation and maintenance will greatly reduce the net proceeds." 26 U.S.C. § 6863(b)(3)(A).

jeopardy assessments and collections.[6] Now the Government asserts that the provisions require a significant difference in treatment, pressing three arguments it avers justify removing the only meaningful right of a jeopardy taxpayer from the reach of a taxpayer processed under § 6851. These arguments are unconvincing.

First, the Government argues that if § 6861 is applied to § 6851, multiple tax periods would be created within the same tax year. The Government feels that such would be the natural consequence of requiring a deficiency notice for the terminated period. It claims that multiple tax periods are not necessary to protect the rights of taxpayers "and would obviously result in severe administrative problems." The argument is meritless. Subsection (b) of § 6851, enacted in 1954, provides that the Secretary or his delegate may *reopen* a taxable period terminated under subsection (a) "each time the taxpayer is found . . . to have received income, within the current taxable year, since (the termination of the period)." This subsection was enacted precisely to avoid the problem of multiple taxable years in the same twelve-month period. See pp. 4569, 5246 of the 1954 U.S.Code Cong. and Admin.News. Requiring a deficiency notice be sent to the taxpayer would not alter the IRS ability to avoid the multiple tax year problem. Further, at the end of the normal twelve-month period a taxpayer, under § 6851(b), is entitled to file a return and may himself reopen the terminated tax period. Hence, the IRS or the taxpayer can avoid the problem conjured by the Government.

Second, the Government argues that applying § 6861 to § 6851 conflicts with 26 U.S.C. § 443. Under § 443 a terminated year taxpayer is required to file a return for less than the normal twelve months at the time of the termination, but no proration of the personal exemption is allowed. See the Report of the Senate Finance Committee on Section 443 (S.Rep.No.1622, 83d Cong., p. 290 (3 U.S.C.Cong. & Adm.News (1954) 4621, 4938–4939)). The Government concludes that if the terminated period is considered a separate taxable year, the taxpayer will either be denied any exemption for this period or be allowed more than one full exemption within the same twelve-month period. Additionally, the Government notes, the taxpayer will be able to avail himself of lower tax rate brackets because of the multiple periods. The entire argument is a rephrasing of the "multiple tax year" problem discussed above with the twist of when the personal exemption should be allowed. As set out above, the Secretary or his delegate may reopen the taxable year after a termination and foreclose the "lower tax rate brackets" problem. The taxpayer may file a normal twelve-month return, reopening the tax period which was terminated, and at that time claim the personal exemption. The Government's position that Congress intended that there be no final determination of the taxpayer's entire liability until the end of the normal twelve-month period thus does not conflict with allowing the taxpayer the

6. See Rev.Proc. 60–1, 60–2:
"Section 1. Purpose.
The purpose of this Revenue Procedure is to set forth the procedures of the Internal Revenue Service relative to the processing and authorizion of jeopardy assessments.
.01 All jeopardy assessments have the common characteristic that collection of tax will be endangered if regular assessment and collection procedures are followed. Jeopardy assessments are made under section 6861 or 6862 of the Internal Revenue Code of 1954 and include tax deficiencies, additions thereto and appropriate interest.
.02 While assessments under section 6851 of the Code, relating to quick departure from the United States or other means to avoid payment of income tax, are not in a technical sense jeopardy assessments, the procedure set forth herein shall also apply to assessments made under that section on current returns and assessments involving termination of taxable periods (except departing aliens)."

right to a deficiency notice, given § 6851(b).

Important to recall at this juncture is that a taxpayer is not creating multiple tax years, nor is he demanding an ultimate determination of the full twelve-month period tax when he seeks to gain access to the Tax Court following IRS seizure of his assets pursuant to a § 6851 jeopardy determination. Rather, he is seeking only some form of judicial review of the validity of the underlying assessment and seizure prior to the conceivably disastrous results that can accompany IRS sale or lengthy withholding of the property. If the "deficiency" contained in the deficiency notice is visualized as the amount assessed in the jeopardy determination, and not an amount determined by comparing a full year return with the IRS's computation of amounts owing (compare Clark v. Campbell, 341 F.Supp. 171, 175–176 (N. D.Tex.1972), with Williamson v. United States, 31 Am.Fed.Tax R.2d 73–800 (7th Cir. 1971)), the confusion otherwise created by the first two arguments advanced by the Government is alleviated, and the issue presented by the taxpayer more sharply focused.

Finally, the Government argues § 6861 procedures are unnecessary to protect a § 6851 taxpayer as the taxpayer is left other remedies which the Government claims are adequate: the taxpayer can litigate the validity of the assessment at the end of the normal twelve-month period, either in a suit for refund in District Court or in a suit in Tax Court following a notice of deficiency issued by the IRS at that time. See Irving v. Gray, supra, 479 F.2d at p. 24; Parrish v. Daly, 350 F.Supp. 735, 737 (S.D.Ind.1972). This argument obtains some strength from the instant facts, for it does not appear that plaintiff here would be irreparably harmed should he be forced to wait and pursue the remedies outlined by the Government. See discussion above. Were this the situation in all § 6851 termination assessments and collections, the position of the Government would be more readily acceptable. A broad view of the practicalities of a denial of § 6861 protections, however, shows an often far different picture. In Kimmel v. Tomlinson, 151 F.Supp. 901 (S.D.Fla.1957), the Court amply portrayed the not infrequent plight of a jeopardy assessment taxpayer who is denied prompt access to some form of judicial review:

". . . (T)he Court does take this opportunity to point out that the reasoning in those cases to the effect that the taxpayer is *amply* protected under the law against any *unjust* summary seizure of his property (and the attendant destruction and bankruptcy of his business) is against all practical experience when applied to this and most other cases where going businesses are seized. In the instant case *every bit* of property (inclusive of bank accounts) of both taxpayers (and their wives) has been seized; it would seem to be a mere mockery to say they, after they have been stripped of all assets, are protected in that they may either post a bond or pay the . . . penalties assessed in order to stay the waste of a forced sale of their assets and the certain destruction of their business. It would seem that in such cases as these common sense dictates that the Courts should be given some leeway in protecting and preserving the assets of a going business and preventing the waste of a forced sale pending the determination of the tax question by a competent tribunal, and that a prompt hearing should be afforded, instead of no provision for such a hearing. Such action by a court, if permitted, would not only preserve the taxpayer's property for the benefit of the Government but, in addition: (1) assure a greater return from the sale of the property by not selling it under forced sale conditions, and (2) would in most cases avoid certain bankruptcy and a needless and wasteful destruction of a taxpayer's going business—indeed his means of livelihood . . ." (Emphasis supplied.)

151 F.Supp. at 902; see also Shelton v. Gill, 202 F.2d 503 (4th Cir. 1953). The Government is not immune from error in its assessments,[7] and with the possibility of such drastic consequence to the taxpayer, the "common sense" expressed in *Kimmel* indicates no rational reason for providing some jeopardy taxpayers prompt access to the Tax Court and not others, insofar as the alternative postponed remedies available.

■ In sum, there is presented no basis for concluding that Congress intended the discriminatory treatment of jeopardy taxpayers advanced by the Government, and very real practicalities for concluding such was not Congress's meaning. This Court finds that § 6861's requirement that a deficiency notice be sent a jeopardy taxpayer is applicable to termination assessments under § 6851 in that it is § 6861, not § 6201(a), that provides the authorization for such assessments. The plaintiff in this case is statutorily entitled to the notice required in § 6861, even though irreparable harm would not flow from a denial of that protection in this particular situation. Thus, injunctive relief under § 6213(a) is available.

3. *Is Relief under Section 6213(a) Premature?*

■ Section 6213(a) allows injunctive relief where the Secretary or his delegate has failed to issue a statutory notice of deficiency within 60 days of the making of the jeopardy assessment. 26 U.S.C. §§ 6213(a), 6861(c). The Government averred, on June 18, that the 60-day period had not elapsed from the time of the assessment here, and that relief would therefore be premature. Though plaintiff responded that 60 days had elapsed from the time of the March 10 assessment, it is from the time of the April 27 abatement and reassessment that the period must be marked.[8] The period in which the no-

---

7. In seeking Congressional authorization for the power to abate an erroneous jeopardy assessment, the IRS made an interesting observation:

"At the present time, once such an assessment has been made, the Bureau believes that it *does not have the authority* to revoke the assessment even though it finds that a mistake has been made and that there is no danger of losing the tax. As a result, the Bureau has had in the past and now has cases before it in which arbitrary jeopardy assessments which may be greatly in excess of any tax found to be due, are a cause of financial embarrassment and danger to the taxpayer involved . . . ."

Sen.Rep.No.730, 83d Cong., 1st Sess. (1953), quoted in *Schreck*, supra, 301 F.Supp. at 1280 n. 26.

8. Because of procedural infirmities in the notice of termination given plaintiff and the signature utilized on that notice, the IRS has characterized the March 10 assessment issued against plaintiff as "illegal". On April 27, however, the IRS "abated" (cancelled) the prior assessment and entered a new, procedurally correct in terms of notice and signature, assessment. While there appears to be no case discussing the effect of such an action in the context of a § 6851 terminated year assessment, the thrust of the reported decisions and logic upholds the Government position that prior § 6851 defects were thus cured.

If the statute of limitations has not run on the assessment action, the IRS may simply make a new assessment of the tax liability that had been abated. Crompton-Richmond Co. v. United States, 311 F.Supp. 1184, 1186 n. 2 (S.D.N.Y.1970), citing Berry v. Westover, 70 F.Supp. 537 (S.D.Cal.1947). In *Berry* the District Court stated, at page 546:

"... in many instances, the powers of those entrusted with the duties of gathering (the federal) revenue have been safeguarded by statute and by judicial decisions to the end that certain of their errors and mistakes shall not in all cases impede the collection or result in loss of revenue justly due the government.

" . . .

" . . .

"It appears logical that if, as was decided in Page v. Lafayette Worsted Co., 1 Cir., 66 F.2d 339, the Commissioner has power to re-assess in a jeopardy assessment an amount previously refunded, he here had the power, (within the period of the statute of limitations) to make more than one jeopardy assessment covering the one liability; . . .

" . . .

"We cannot agree . . . that the failure of the Commissioner to mail a notice of deficiency after making the (prior)

tice of deficiency was to be sent plaintiff has long since passed, however, and the notice has not been issued. Relief under § 6213(a) would not be premature.

4. *What is the Extent of the Remedies to Which Plaintiff is Entitled?*

■ Plaintiff seeks two distinct modes of relief via preliminary injunction: (1) to enjoin the Government from continuing in force and effect its assessment, levy and collection efforts against plaintiff unless it promptly sends him a deficiency notice, and (2) to order the monies thus far seized be refunded. He is only entitled to the former, not the latter.

In both *Schreck* and *Campbell*, the courts only allowed the taxpayer injunctive relief against governmental attempts to assess, levy and collect funds that did not comply with § 6861. Neither case, however, allowed a refund of monies already collected. See *Schreck*, supra, 301 F.Supp. at 1284; *Campbell*, supra, 341 F.Supp. at 176. In United States v. Bonaguro, 294 F.Supp. 750 (E.D.N.Y.1968), the Court held that IRS failure to comply with §§ 6851 and 6861 entitled the taxpayer to an order directing return of currency seized. *Bonaguro*, however, conflicts with §§ 7422(a) and 6532(a)(1) of the Code which bar

assessment deprived said officer of the right to set again in motion the machinery necessary to insure collection of the taxes involved . . ."

The IRS could properly retain possession of the funds during the abatement and re-assessment procedures even if the monies were originally illegally seized. See Cancino v. United States, 451 F.2d 1028, 1033, 196 Ct. Cl. 568 (1971), cert. denied, 408 U.S. 925, 92 S.Ct. 2504, 33 L.Ed.2d 337 (1972); Ginsberg v. United States, 408 F.2d 1016, 1017 n.1 (9th Cir. 1969). As stated in *Cancino*, 451 F.2d at page 1033:

civil suits "for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected" until a claim for refund has been filed with the IRS and six months have passed from the time of filing in which no IRS action has been taken on the claim. Sections 7422(a) and 6532(a)(1) are clearly applicable to the instant case. See United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931); Mulcahy v. United States, 388 F.2d 300 (5th Cir. 1968); Dixie Margarine Co. v. Schaefer, 139 F. 2d 221 (6th Cir. 1943), cert denied 321 U.S. 791, 64 S.Ct. 789, 88 L.Ed. 1081 (1943); McMahon v. United States, 172 F.Supp. 490 (D.C.R.I.1959); McConnell v. United States, 295 F.Supp. 605 (D.C. Tenn.1969). As plaintiff has not filed the claim for refund, this Court is without jurisdiction to order the refund he seeks. See United States v. Rochelle, 363 F.2d 225 (5th Cir. 1966); Miniature Vehicle Leasing Corp. v. United States, 266 F.Supp. 697 (D.C.N.J.1967).

This opinion constitutes this Court's findings of fact, conclusions of law and preliminary injunction.

## ORDER

It is therefore ordered that the defendant forthwith furnish plaintiff with a deficiency notice.

"The cases in this area hold clearly and unequivocally that a Federal tax lien can attach to illegally seized property without violating the Fourth Amendment. (Cites omitted.) No rights of plaintiff were violated when the Internal Revenue Service collected the $17,891 (seized by police) to pay his outstanding tax debt (under § 4741 assessment for marijuana transfer tax) secured by a tax lien. As a practical matter, even if the money were returned to plaintiff, as he claimed it should be, nothing would prevent the service from again levying on this same money at the time of its delivery to the petitioner."